JOHN S. CONDELL, JR.,

v.

KROHN, FEISS & Co.

*Sales—Fraud—Replevin—Evidence—Practice—Acquiescence.*

1. In an action of replevin to recover goods alleged to have been obtained with the intention not to pay for them, by one who transferred them to the defendant, this court declines to interfere with the verdict for the plaintiffs, the question of fraudulent intention being for the jury.

2. Upon a question of fraudulent intention in the purchase of goods a wide range of inquiry is permissible.

[Opinion filed January 21, 1888.]

IN ERROR to the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. PATTON & HAMILTON and JONES & SALZENSTEIN, for plaintiff in error.

Where there are no false representations, and the intention with which the vendee ordered the goods is alone relied on to avoid the sale and delivery, it must be shown that at the very time of the contract of sale the vendee had formed a positive and predetermined intention never to pay for the goods. It is not sufficient to show the kind of fraud relied on here, that

the purchaser buys the goods without intending to pay for them. Such a negative or indifferent state of mind as respects payment will not render the sale fraudulent. Catlin v. Warren, 16 Ill. App. 418.

To constitute such fraud there must be a preconceived design never to pay for the goods. A mere intent not to pay for the goods when the debt becomes due is not enough. A design not to pay according to the contract is not equivalent to an intention never to pay for them, and does not amount to an intention to defraud the seller, although it may be evidence of such contemplated fraud. Nor is it enough to constitute the fraud that the buyer is insolvent, and knows himself to be so at the time of the purchase, and conceals the fact from the seller, and has no reasonable expectation that he can ever pay the debt. The only intent that renders the sale fraudulent is a positive and predetermined intention, entertained and acted upon at the time of going through the forms of an apparent sale, never to pay for the goods. Burrill v. Stevens, 73 Maine, 395; Cross v. Peters, 1 Greenl. 378; Baggs v. Barry, Curtis C. C. 259; Rowley v. Bigleton, 12 Pick. 306; Noble v. Adams, 7 Taunt. 59; Bristol v. Widsmore, 1 B. & C. 514; Kirby v. Wilson, R. & H. 178; Stewart v. Emerson, 52 N. H. 301; Bilandt v. Wales, 19 Mo. 36; Thompson v. Rose, 16 Conn. 71; Morrill v. Corbin, 13 Ill. App. 81.

The case of Schroeder v. Walsh, 120 Ill. 403, establishes three propositions of law directly applicable to a correct decision of this case.

1. Where a sale of goods is sought to be avoided for fraud, the fraud must be shown by at least a preponderance of the evidence, or the sale will not be defeated. Generally the proof of the fraud should be clear and satisfactory.

2. A man has a perfect right to deal with his relations, to buy and sell to and from them, and the presumption of the law is that dealings between relatives are fair and honest, without any wrongful or fraudulent intent, and no presumption of fraud attaches to such dealings.

3. That in the absence of a bankrupt law or a statute to the contrary, a debtor in failing circumstances, who does not

Condell v. Krohn, Feiss & Co.

seek the benefit of the general assignment law, may prefer one creditor to another equally meritorious, if done in good faith.

Messrs. Orendorff & Patton and John M. Palmer, for defendant in error.

*Per Curiam.* Replevin against the sheriff for 5,000 cigars part of a stock taken on five writs of execution against L. S. Ensel, who was then in possession and apparently the owner. ·Those in controversy he obtained from the plaintiffs by a formal purchase, but as they allege, with the intention not to pay for them. On that ground alone they based their right of action and recovered.

It was a very proper case for a jury, involving the single question of his intention in respect of payment at the time he ordered them. He positively denied the fraud charged, and to establish it against such denial plaintiffs necessarily relied on proof of circumstances. These embraced very many of such as would be expected on that theory, but hardly on any other, as, known insolvency at the time of the pretended purchase, his indebtedness being largely due to near relatives on old transactions of doubtful odor; unreasonably large purchases in the aggregate, but of moderate amounts of many dealers, recently made; the execution of judgment notes sufficient to cover his stock, of which five-sixths in amount were to these relatives, after the goods were shipped on his order from Cincinnati and before they arrived; judgments soon after confessed on these notes; the conveyance to his brother, at the same time, of his valuable residence property, in expressed consideration of indebtedness due him, and the transfer of all his other real estate (in Missouri) and all his old' notes and accounts to apply on debt to the bank, leaving nothing visible out of which plaintiffs and other creditors could realize their claims; the purchase of· his stock from the execution creditors who had bought under judgments confessed on the notes referred to, at a large discount, by his son-in-law, whose means would hardly warrant it; and the

resumption of business on the old stock with Ensel in charge as his manager. These are the principal facts which, with many suspicious incidents, plaintiffs claim to have shown and urge as indicating his intention not to pay. They were all supported by proof—many being established undeniably by records and documents in evidence. They were clearly competent as tending to prove the intention charged, and were of the only kind of proof of which such an intention is susceptible.

We do not say that any of them, if proved, were sufficient to establish it, nor express any opinion as to the weight of all combined; but they were proper for the jury to consider, and to determine their weight. Nor do we overlook the facts that Ensel claimed he was not insolvent at the time he ordered these goods, and that the amount of his recent purchases was not unreasonably large, in view of trade prospects, and that evidence was introduced to explain other suspicious circumstances. But this conflict of evidence as to facts, and these differences as to the significance of those not contested, brought the case all the more clearly within the exclusive province of the jury. For a just finding upon these points the jury certainly had the best advantages. They saw and heard Ensel testify. He was the most prominent if not the most important witness in the case. His manner on the stand clearly challenged and must have received their closest attention and most careful consideration. It would be presumptuous for us to substitute our best estimate of the bearing and weight of his testimony. And so of the other witnesses.

The objections urged to the rulings of the court were not many, nor in our opinion very serious. Ensel's agreement with the bank was competent, as tending to show that his real estimate of the value of the property he transferred to it was too far below what he stated on the trial, where his solvency at the time was in question, to be accounted for on any supposition consistent with that of his honesty or truthfulness.

Upon a question of fraudulent intention, such as was here charged, a wide range of inquiry must be allowed. The pur-

chase of the stock from the judgment creditors by Stern, and its subsequent management by Ensel, may be regarded, in view of his relations to the other parties and to the property, as part of the *res gestæ*.    Besides, the failure to renew the motion to exclude the evidence on that subject, may well be treated as an acquiescence in its admission.

We do not think the instructions fairly subject to the criticisms of counsel, and on the whole see no sufficient reason for reversing the judgment.    It will be affirmed.

*Judgment affirmed.*