NORMAN E. HULCHER, Plaintiff-Appellee, *v.* ARCHER DANIELS
MIDLAND COMPANY, Defendant-Appellant.

Fourth District    No. 15696

Opinion filed August 20, 1980.

Davis & Morgan, of Peoria (Stephen D. Gay, of counsel), for appellant.

Denby, Dobbs, Meno & Bloomer, P. C., of Carlinville, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The plaintiff Norman E. Hulcher sued the defendant Archer Daniels Midland Company (ADM) for malicious prosecution and wrongful attachment in the circuit court of Macoupin County. After a bench trial a judgment was entered in favor of Hulcher and against ADM in the amount of $50,000 plus costs. The defendant has appealed from the adverse judgment and also claims that the amount of damages awarded were excessive. The plaintiff, with leave of this court, has filed a late cross-appeal claiming that the amount of damages awarded was inadequate.

A history of the dealings between plaintiff and defendant, which commenced in the 1950's, is necessary to fully understand the issues raised in this appeal. Specifically we will set forth the background which resulted in ADM filing suit against Hulcher, who was then doing business as Hulcher Soya Products Company, Incorporated. That lawsuit formed the basis of this action against ADM for malicious prosecution and wrongful attachment.

Hulcher Soya Products Company, Incorporated, was incorporated in 1946. Hulcher, himself, was president of the corporation and owner of 999 of 1000 shares of the corporation. Although Hulcher's corporation was initially engaged in other businesses, it ultimately became active as a trader in the soybean futures market. In the course of this dealing, Hulcher's corporation purchased and sold soybean futures contracts from and to many companies, one of whom was the defendant ADM. In December of 1955 ADM requested a financial statement from Hulcher's corporation. Hulcher personally prepared a financial statement as of the close of business on December 1, 1955, showing a net worth for Hulcher's corporate business of $862,777. When the futures market took a sharp downturn in 1956, Hulcher's corporation was unable to pay its debts as they came due. Ultimately the Hulcher Soya Products Company, Incorporated, was

forced into bankruptcy. During the bankruptcy proceeding it became apparent that a substantial discrepancy existed between the financial statement Hulcher had given to ADM and an audited financial statement of Hulcher's corporation. During the pending bankruptcy, several sales of Hulcher's corporation were proposed. The first attempted sale of all the bankrupt corporation's assets was to Wallace Huegely. This sale was rejected by the bankruptcy court. A subsequent sale of just the common stock of the corporation was approved and accomplished to Frank Young. ADM and several other creditors of the corporation, with Hulcher's agreement, reserved the remaining amounts of their claims for debts of the bankrupt corporation, against Hulcher personally. On August 10, 1959, ADM instituted a lawsuit against Hulcher personally by filing an affidavit for attachment and obtaining a writ of attachment. ADM's complaint alleged in count I that Hulcher had prepared and submitted a financial statement to ADM which was false and fraudulent in that it materially misrepresented the net worth and assets of Hulcher Soya Products Company, Incorporated. The second count of ADM's complaint alleged that Hulcher had failed to give ADM notice of a material change in his corporation's financial condition contrary to the express representation in the financial statement that no material change had occurred and that Hulcher would give ADM notice if such a change in the financial condition did in fact occur. Following a bench trial a verdict was rendered in favor of Hulcher and against ADM on July 26, 1960. ADM appealed from the adverse verdict, but it was affirmed by the appellate court on September 6, 1961. (*Archer-Daniels-Midland Co. v. Hulcher* (1961), 32 Ill. App. 2d 111, 176 N.E.2d 816 (abstract).) Thereafter, the petition of ADM for leave to appeal to the Illinois Supreme Court was denied.

Hulcher then instituted the lawsuit from which this appeal is taken against ADM. Following a verdict in Hulcher's favor in the amount of $50,000, ADM filed this appeal. ADM has phrased the issues presented for review as follows:

1. Did ADM have probable cause to begin its action against HULCHER?

2. Did ADM act with malice in bringing its action against HULCHER?

3. May an attachment be founded on a claim or must it be based on an actual debt?

4. Did the trial court erroneously admit certain testimony into evidence?

5. Were the damages awarded by the trial court excessive?

Hulcher, on his cross-appeal has phrased as an additional issue: Whether the damages awarded were inadequate as a matter of law.

The elements of the tort of malicious prosecution are as follows:

"(1) institution and prosecution of judicial proceedings by the defendant; (2) lack of probable cause for those proceedings; (3) malice in instituting the proceedings; (4) termination of the prior cause in plaintiff's favor, and (5) suffering by plaintiff of some special injury, beyond the anxiety, loss of time, attorney fees, and necessity for defending one's reputation, * * *." (*Lyddon v. Shaw* (1978), 56 Ill. App. 3d 815, 818, 372 N.E.2d 685, 687.)

It is not disputed that the original judicial proceedings against Hulcher were instituted and prosecuted by ADM. Those judicial proceedings were also terminated in Hulcher's favor. The amount and existence of damages is a separate issue raised by both parties and will be dealt with subsequently in this opinion.

ADM claims that Hulcher failed to establish both lack of probable cause to bring the action against him and malice.

■■ In support of ADM's assertion that it had probable cause to bring the lawsuit against Hulcher, it is argued by ADM that they relied upon the advice of counsel in bringing the action. Alternatively ADM claims this established the existence of probable cause as a matter of law or that the finding of the lack of probable cause by the trier of fact is against the manifest weight of the evidence. ADM allegedly relied upon the advice of two of its attorneys, Mr. Stiles and Mr. Boland, in bringing suit against Hulcher personally after the bankruptcy. It is argued that relying on the advice of counsel is a complete defense, as a matter of law, to a charge of malicious prosecution. (*Pratt v. Kilborn Motors, Inc.* (1977), 48 Ill. App. 3d 932, 363 N.E.2d 452; *Carbaugh v. Peat* (1963), 40 Ill. App. 2d 37, 189 N.E.2d 14.) Probable cause which would prevent liability for malicious prosecution is such a state of facts as would lead a man of ordinary caution and prudence to believe that he has a justiciable claim to prosecute against the defendant. The reliance on the advice of an attorney before initiating the lawsuit is a valid defense.

"While advice of counsel is a defense to a suit for malicious prosecution, its validity depends upon the facts and circumstances communicated by the defendant to his attorney, whose advice must be sought, given and acted upon in good faith. Whether these elements are present is a jury question." (*Freides v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 296, 211 N.E.2d 286, 289.)

We agree with the court in *Freides* that the issue of whether the defendant had probable cause to bring the initial lawsuit is preeminently a question of fact. The facts surrounding the existence of probable cause and ADM's good faith in relying upon its two attorneys' advice to pursue Hulcher personally after the bankruptcy are facts disputed in the record. We cannot agree with ADM that it possessed probable cause as a matter of law. We

also believe that defendant has failed to establish that a finding of lack of probable cause is against the manifest weight of the evidence. The trial court specifically found that the financial statement claimed by ADM to be the foundation of its claim against Hulcher personally was a statement of the assets of Hulcher's corporation and not those of Hulcher personally. The trial court also found that all of ADM's dealings were with Hulcher's corporation and not Hulcher personally, including the extension of credit by ADM. Based upon this the trial court correctly concluded that ADM did not rely on a statement of the assets owned by Hulcher personally. We defer weighing the evidence as to the existence of probable cause on the part of ADM to the trial court. "We are loath to overturn the findings of the trier of facts. He is in a position to see and hear the witnesses and to judge their credibility, and is in a position to weigh the evidence." (*Vassel v. Underwood* (1967), 85 Ill. App. 2d 222, 226, 229 N.E.2d 354, 356.) The manifest weight of the evidence supports the finding that ADM lacked probable cause to bring the initial lawsuit against the plaintiff, Hulcher.

■■ The next issue is whether the plaintiff, Hulcher, established the requisite malice on the part of ADM to recover under a theory of malicious prosecution. Malice has been defined as being actuated by improper and indirect motives. (*Robinson v. Econ-O-Corporation, Inc.* (1978), 62 Ill. App. 3d 958, 379 N.E.2d 923.) Hulcher's burden was to establish some ulterior motive in ADM other than just recovering the money actually owed. (*Franklin v. Grossinger Motor Sales, Inc.* (1970), 122 Ill. App. 2d 391, 259 N.E.2d 307.) Hulcher attempted to do this by introducing into evidence statements made by ADM's attorneys, Glen Stiles, who was in effect ADM's in-house counsel from Minneapolis, Minnesota, and Lee Boland, who was the local co-counsel in Illinois, both of whom represented ADM in these matters. Hulcher has also argued on appeal, as he did in the trial court, that ADM's pursuit of him personally after the bankruptcy was vindictive because of ADM's loss that resulted from Hulcher's corporation's bankruptcy and the resulting discharge of its creditors including ADM. Attorney Boland's reported statements are at best ambiguous as an attempt to establish an improper and ulterior motive to ADM attorney Stiles' statement, two years prior to ADM's lawsuit against Hulcher, that he would get Hulcher if it was the last thing he ever did, is indicative of malice, although it is not conclusive. However, malice may be inferred by the trier of fact from the lack of probable cause. (*McElroy v. Catholic Press Co.* (1912), 254 Ill. 290, 98 N.E.2d 527; *Ferrell v. Livingston* (1951), 344 Ill. App. 488, 101 N.E.2d 599.) The record in this case manifestly supports the trial court's finding that there was an absolute lack of probable cause for ADM to bring the lawsuit against Hulcher, and accordingly the trial court, as the trier of fact, could properly infer malice therefrom. (*Vasquez v. Jacobs* (1960), 23 Ill. App. 2d 457, 163 N.E.2d 230.) We believe the trial court succinctly

6

summarized the evidence presented in his express findings prior to rendering judgment in favor of Hulcher when he stated the tactics employed by ADM in pursuit of Hulcher personally for the debt of his bankrupt corporation, and concluded that Hulcher had proved his case for malicious prosecution against ADM.

ADM has argued that malice may not be inferred from a lack of probable cause. (*Hughes v. New York Central System* (1959), 20 Ill. App. 2d 224, 155 N.E.2d 809; *Montgomery v. Harms* (1953), 349 Ill. App. 245, 110 N.E.2d 522; *Shelton v. Barry* (1946), 328 Ill. App. 497, 66 N.E.2d 697.) Generally malice may not be inferred as a legal conclusion, and only under certain circumstances may malice be inferred as a factual conclusion. In the cases relied upon by ADM, it is established that the trier of fact may not infer malice from a lack of probable cause where there is absolutely no other evidence of malice. In *Hughes, Montgomery,* and *Shelton,* all the evidence established a lack of malice, and the trier of fact was not allowed to infer malice from the lack of probable cause. In the case at bar much of the evidence tended to establish malice and the case is clearly factually distinguishable from those cases relied upon by ADM. Accordingly, the factfinder in the instant case properly inferred malice from ADM's lack of probable cause.

■■ In a related argument ADM claims that Hulcher's testimony and that of his attorney reporting the damaging statements made by ADM's attorneys were inadmissible hearsay, or alternatively that such statements cannot be imputed to them to establish the existence of malice. Those out-of-court statements reported by witnesses in court, although hearsay, squarely fall within one or more exceptions to the hearsay rule. Firstly, hearsay evidence is admissible in a proper case with respect to proving motive. (*Carpenters' Union v. Citizens' Committee* (1928), 333 Ill. 225, 164 N.E.2d 393.) The statements of ADM's attorneys were offered to prove motive and were admissible to show the state of mind of ADM. Most importantly, the malice which Hulcher attempted to prove in the instant case was established not exclusively by the direct evidence offered but by a permissible inference from the entire lack of probable cause. The other evidence clearly established the corporate acts of ADM filing the lawsuit and attachment initially as well as the pursuit of Hulcher individually for the debt of his corporation, all of which allow for the trier of fact to draw an inference of malice from ADM's lack of probable cause. Hearsay evidence of the same type has been held to be admissible under the exception of the *res gestae* doctrine. The statements defendant objected to show the intent and motivation of ADM and are part of the *res gestae*. (*Condell v. Krohn, Feiss & Co.* (1888), 29 Ill. App. 377.) The corporate mind of ADM could not verbalize its intent except through its agents and attorneys. The statements to which ADM objects were obviously unintended verbal reactions and tend to reveal

ADM's corporate motivation, and were made as a part of the entire dispute which lasted several years. In our view the statements render the existence of malice more probable.

■■ Although ADM has argued that the statements of its attorneys cannot be imputed to them, we believe they can. An attorney may act as an ordinary agent and make admissions admissible against his principal. (See *Haskell v. Siegmund* (1960), 28 Ill. App. 2d 1, 170 N.E.2d 393.) We believe that attorneys Stiles and Boland, being involved from the beginning of the dispute through the last stages of litigation, zealously represented their corporate client in such fashion that the statements showing ulterior motive and ill will may be imputed to ADM, who ultimately authorized the litigation as well as all of the out-of-court attempts at recovering money from Hulcher.

ADM has also argued that the attachment was not wrongful and that Hulcher could have avoided its effect by posting a bond. The attachment of Hulcher's Illinois property is not relevant to the issues presented in this case involving the malicious prosecution. The relevant fact is that Hulcher's property was the subject of an attachment in a lawsuit ultimately found by the trial court to be lacking in probable cause. The attachment of Hulcher's property is an element of damages. Whether it was wrongful or not need not be decided in disposing of this appeal, except as it might concern the alleged excessiveness of the damage award.

The last issue raised is whether the damages awarded ($50,000) were inadequate, as argued by Hulcher, or excessive, as argued by ADM. Certainly we must give great weight to the statement of the trial court in rendering a $50,000 judgment for Hulcher. The trial judge stated that Hulcher's proof of damages had fallen far short of what he had requested and that the evidence only supported a $50,000 damage award. Hulcher had the burden of proving an amount of damage with a reasonable degree of certainty. The damages must not be speculative and they must be the natural result of the wrong inflicted. (*Chicago Title & Trust Co. v. Walsh* (1975), 34 Ill. App. 3d 458, 340 N.E.2d 106; *Freehill v. DeWitt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52.) Much of the alleged damage to Hulcher was speculative in light of the fact that his subsequent business opportunities had no past track record upon which to base lost profits. (*Rhodes v. Sigler* (1976), 44 Ill. App. 3d 375, 357 N.E.2d 846.) Also much of the damage resulted from other factors unrelated to the malicious prosecution of Hulcher by ADM. The record supports the damages awarded by the trial court and nothing in excess thereof.

●■ As aforesaid, ADM argues that the damages awarded were excessive. In part whether the damages awarded are excessive or not depends upon whether the attachment of Hulcher's Illinois property was wrongful. For purposes of determining damages we believe the attachment in this case

was wrongful, wrongful in that it was not based upon a liquidated debt owed to ADM by Hulcher. (See *Gale v. Transamerica Corp.* (1978), 65 Ill. App. 3d 553, 382 N.E.2d 412.) Although ADM has argued persuasively to the contrary they have cited little authority for their position. The damages awarded to Hulcher were for ADM bringing a baseless lawsuit against him and the wrongful attachment was an incidental part of the lawsuit. Hulcher proved to the satisfaction of the trial court that he suffered special damages as a direct result of ADM's lawsuit and attachment of his property. We agree with the trial court in concluding that Hulcher failed to prove all the damages he claimed, as we have indicated, but that the record supports damages in the amount of $50,000 as the trial court awarded.

For the reasons stated, the judgment of the circuit court of Macoupin County is affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.