JAMES MARLOWE *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF WAUCONDA *et al.*, Defendants-Appellants.

Second District   No. 79-698

Opinion filed December 22, 1980.—Rehearing denied January 20, 1981.

William W. Kurnik and Jay S. Judge, both of Judge, Drew, Cipolla & Kurnik, of Park Ridge, for appellants.

Wayne B. Giampietro, of DeJong, Poltrock & Giampietro, of Chicago, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, the Village of Wauconda, and its mayor, John Dianis, appeal from a judgment entered after trial by jury which awarded damages of $35,000 each to plaintiffs, James Marlowe and Gerald Strobot, and $35,100 to plaintiff, Signet Home Center, Inc.

In count I of their amended complaint plaintiffs sought recovery of damages pursuant to 42 U.S.C. §1983 (1976),[1] alleging that defendants deprived them of their right to due process and the equal protection of the laws, and in count II they sought damages for malicious prosecution.

The events giving rise to this action first occurred in 1975 when Marlowe, a builder and contractor, purchased four lots in the village. Before doing so, he had consulted with William Sutton, the village building inspector, who informed him that local zoning ordinances permitted construction of single-family homes on the lots. Plaintiffs Marlowe, Strobot and a third person then formed plaintiff, Signet Home Center, Inc., and secured construction loans. Marlowe furnished surveys of the lots and the proposed construction sites upon them to the building inspector and on May 12, 1975, was given the requisite building permits.

---

[1] 42 U.S.C. §1983, (1976), provides: "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subject, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Construction was commenced and excavation, footings and foundation were completed on lot 85 and excavation and footings only on lot 84. Neighbors observing the work questioned whether the construction met the rear yard set-back requirements of the village zoning ordinance and complained to Mayor Dianis and to certain village trustees. These officers met with the neighbors at the construction site, observed the work in progress, took measurements and discussed whether there was a zoning violation.

A "rear yard" is defined in the village zoning ordinance as "the yard extending the full width of the rear of the zoning lot between the rear lot line and a building line." (Wauconda Zoning Ordinance §1902.) The zoning ordinance also requires that a single-family residence must be located on a lot so as to have a rear yard depth of at least 25 feet or 20 percent of the average depth of the lot, whichever is smaller. (Wauconda Zoning Ordinance §§1902 and 1903.3—5.) Lot 84, with which we are primarily concerned in this case, was pie-shaped, however, and there was an uncertainty among those considering the problem as to the correct points from which to measure to determine whether the rear yard set-back requirement was met.

Marlowe argued, and the village building inspector who had approved the siting and at least one trustee apparently agreed, that compliance with the ordinance was attained if the rear yard measured 25 feet at *any* point between the building and the property line, as shown by measurement A. The mayor, some of the trustees, and others, considered that the terms of the ordinance were not met unless the 25-feet or 20-percent set-back pertained at *each* point between the building and the rear property lines. Under this view of the ordinance plaintiff's construction within approximately six feet of the property line, as shown by measurement B, would clearly be in violation.

On May 14, 1975, Mayor Dianis directed the building inspector to place a "red tag," or stop order, on lots 84 and 85. This notice stated that a violation of the zoning or building ordinances of the Village of Wauconda existed on the lots and that no further work may be done on the buildings. It further advised that failure to comply with the notice would subject a violator to a fine of not more than $200. The mayor also directed the building inspector to deliver a letter (signed by the building inspector but drafted by the mayor) to plaintiffs which stated the reasons for the issuance of the stop order. The building inspector did so and the letter stated, *inter alia*, that the minimum rear yard requirement was not met, the construction infringed on a utility easement and would be under high tension power lines. It directed that the violations should be corrected or the excavations filled as constituting a danger.

In an effort to resolve the dispute, the mayor, building inspector and certain village trustees met at the construction site with Marlowe and Strobot on May 17, 1975. Measurements were again taken, and when it was determined that lot 85 was in compliance with the ordinance, the red tag was removed by defendants and construction resumed on it. There was no agreement reached, however, as to lot 84. During the discussion a neighbor, Earl Clifford, stopped by the site when he saw all the people there. He testified that the building inspector and one of the village trustees had said there were no zoning violations. He also testified he heard defendant, Mayor Dianis, say he "didn't care whether the building violations were there or not, he didn't like the house being put upon this property. He said it didn't look right." Clifford also stated the mayor was not addressing anyone in particular but merely making a comment. The stop order remained upon lot 84 and plaintiffs did not then continue with construction on that lot.

At about this time the building inspector also informed Marlowe that plaintiffs could appeal the stop order to the village zoning board of appeals. The Wauconda zoning ordinance provided as follows in this regard:

"Appeal: an appeal may be taken to the [zoning] board of appeals by any person, firm or corporation, or by any officer, department, Board or Bureau affected by a decision of the Building Inspector relative to this ordinance. Such appeal shall be taken within such time as shall be prescribed by the board of appeals by general rule, by filing with the building inspector and with the board of appeals a notice of appeal, specifying the grounds thereof. The building inspector shall forthwith transmit to the board all of the papers constituting their record upon which the action appealed from was taken." (Wauconda Zoning Ordinance §1906.1(B).)

The ordinance further provided that an appeal stayed all proceedings unless the building inspector certified that to do so would cause imminent peril. It also provides for notice to the parties of the hearing, that any person may there testify, and that the board of appeals was authorized to reverse, affirm or modify the decision appealed.

Marlowe testified that plaintiffs declined to appeal the stop order, feeling it would be a waste of time because some of the persons on the zoning board of appeals were also at the May 17 meeting. Strobot testified in this regard that he was himself a member of the board of appeals and declined to appeal to it as he didn't believe it could do anything to resolve the problem. Both Marlowe and Strobot also testified they had never had any prior problems, disagreements or confrontations with Mayor Dianis.

The impasse continued until near the end of July 1975 when plaintiffs, acting on the advice of their attorney, resumed construction on lot 84. When the mayor learned of this he directed the building inspector to charge them with the ordinance violation and on August 5, 1975, village police officers served Marlowe at the construction site with a "Non-traffic Complaint and Notice to Appear." It was signed by the building inspector and charged Marlowe with violation of the rear yard set-back ordinance. The complaint and notice directed Marlowe to appear in court on August 22, 1975, and on his failure to do so stated that the court would issue a warrant for his arrest. The police officers, however, advised Marlowe he would have to return with them to the police station to post bail. He did so and was required to wait there for several hours until he could obtain the $25 bail deposit required for his release. Thereafter, on August 6, a similar complaint was served upon Strobot at the construction site and he, too, was required by the police officers to go to the police station and post $25 bail for his release.

On September 17, 1975, the village sought an injunction against plaintiffs in the circuit court to prevent further construction on lot 84 in violation of the zoning ordinance. A temporary restraining order was issued by the court but the village's request for a permanent injunction

was denied after trial of that issue. In denying the injunction, the trial court found, *inter alia*, that the village had failed to prove the rear yard violation claimed and that it was estopped from prohibiting construction on the property in conformance with the plan submitted to the building inspector and the building permit issued by him. The village appealed to this court from the denial of the injunction, and it was still pending at the time of the trial of this case.[2] After the injunction was denied plaintiffs resumed construction on lot 84 and completed the house in September 1976. Subsequently, they applied for an occupancy permit from the village which was not issued to them until several months thereafter; no reason for the delay appears in the record. Plaintiffs also testified they had received an offer to purchase the premises for $42,500 but that the sale was not consummated because the pending appeal by the village of the injunction case prevented them from providing a clear title to the prospective buyers.

In their appeal of this case defendants contend they did not, as a matter of law, violate plaintiff's constitutional rights by their conduct and, in the alternate, that the verdict of the jury was contrary to the manifest weight of the evidence. Defendants further contend they were immune from liability for damages; that an award of punitive damages was improper; that the verdict form submitted to the jury was erroneous; and that the trial court erred in its rulings on objections to certain evidence.

As a basis for recovery of damages for claimed violations of their civil rights under count I of the complaint, plaintiffs essentially alleged that defendant Dianis had no authority in law to take any of the described actions directed towards enforcing the village zoning ordinance and did so in bad faith for the purpose of harassing plaintiffs and to force plaintiff Strobot to relinquish his seat on the zoning board of appeals. Plaintiffs further alleged Dianis acted without probable cause to believe plaintiffs' building failed to comply with the zoning ordinance and that the injunction suit instituted by the village was for the sole purpose of harassing plaintiffs as was the delay in issuance of the occupancy permit. Plaintiffs concluded this conduct on the part of defendants deprived them of due process and equal protection of the laws under the Federal and Illinois constitutions to their damage.

In count II, sounding in malicious prosecution, plaintiffs additionally alleged that the injunction suit and the ordinance-violation complaints against them were prosecuted by defendants with malice, without reasonable or probable cause and were resolved in plaintiffs' favor.

■■■ In order to prevail in an action based upon malicious prosecution

---

[2] The appeal was subsequently dismissed by this court as moot when we were informed construction of the disputed building had been completed by plaintiffs.

brought pursuant to 42 U.S.C. §1983 (1976) plaintiffs must show that defendants, while acting under color of State law, infringed upon or deprived them of constitutional rights, and did so with malice and without probable cause. (*Terket v. Lund* (7th Cir. 1980), 623 F.2d 29; *Hampton v. Hanrahan* (7th Cir. 1979), 600 F.2d 600; *Banish v. Locks* (7th Cir. 1969), 414 F.2d 638; *Uretsky v. Baschen* (1977), 47 Ill. App. 3d 169, 361 N.E.2d 875.) A municipality is considered as a person amenable to suit under section 1983 if the action is based upon its own policies or administrative acts, but it cannot be held liable solely on a theory of respondeat superior because it employs a tortfeasor (*Monell v. Department of Social Services* (1978), 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018; *Bohacs v. Reid* (1978), 63 Ill. App. 3d 477, 481, 379 N.E.2d 1372, 1375.) Lack of probable cause is an essential element of a cause of action brought pursuant to section 1983, and once it has been established, evidence of a malicious motive on the part of a defendant becomes immaterial. *Terket*; *Stamatiou v. United States Gypsum Co.* (N.D. Ill. 1975), 400 F. Supp. 431, *aff'd* (7th Cir. 1976), 534 F.2d 330.

The issue of probable cause presents a mixed question of law and fact. Where the facts relied upon to show probable cause are controverted they must be resolved by the jury before the court may apply the controlling legal principles relating to probable cause. Where, however, the evidence is undisputed, whether probable cause exists is a question of law to be resolved by the court. (*Banish v. Locks* (7th Cir. 1969), 414 F.2d 638, 641; *Andersen v. Schulman* (N.D. Ill. 1971), 337 F. Supp. 177, 184; *Angelo v. Faul* (1877), 85 Ill. 106; *Hulcher v. Archer Daniels Midland Co.* (1980), 88 Ill. App. 3d 1, 409 N.E.2d 412; *Gaszak v. Zayre of Illinois, Inc.* (1973), 16 Ill. App. 3d 50, 56-57, 305 N.E.2d 704, 709-10; Annot., 87 A.L.R.2d 183 (1963).) As we have determined that the issue of whether defendants' conduct was based upon probable cause is dispositive, we will address that question first.

Plaintiffs primarily contend that the mayor had no reasonable or probable cause to initially cause construction to be halted once it had been demonstrated the objections to it were unfounded and, even if probable cause existed at that point, that there was no basis for the continued harassment of plaintiffs thereafter. Defendants contend, however, that in light of the ambiguities which arise when the ordinance requirements are applied to plaintiffs' irregularly shaped lot, that Mayor Dianis was justified in his belief the building was in violation and defendants' subsequent enforcement actions were undertaken with probable cause to do so.

Plaintiffs in their brief refer to evidence of a chain of allegedly harassing events which they contend defendants undertook without

probable cause, for which they are subject to the remedy provided by section 1983:

(1) Issuance of red tags after the building inspector had granted building permits and refusal to remove them after it was demonstrated they were wrongfully issued;

(2) Arresting Marlowe and Strobot when a notice to appear would have sufficed;

(3) Filing the injunction suit against plaintiffs on the untrue grounds of zoning violations;

(4) Obtaining a temporary restraining order without notice to plaintiffs by falsely alleging an emergency existed;

(5) Attempting to amend the injunction suit by adding new grounds during trial;

(6) Refusing to issue an occupancy permit for several months;

(7) Refusing to dismiss the appeal of the injunction suit.

We note that plaintiffs do not challenge the validity of the zoning ordinance insofar as it requires that their building be set back from the property line. Neither do plaintiffs assert the invalidity of the enforcement provisions of the ordinance by which construction undertaken in violation of its terms may be halted and violators charged and fined.

In this case the only operative fact necessary to determine whether there was probable cause to believe a rear yard violation was present is established by the plat of survey of the lot in evidence. It demonstrates, and the parties do not dispute the fact, that the building was to be constructed substantially less than the 25-foot minimum distance from most of the rear property line. Whether it met the alternate requirement of being set back a distance equal to 20 percent of the average depth of the lot does not appear to us to be as clear as plaintiffs suggest. They offer a computation: add the 103.5-foot side, the 100-foot side and half the 19.3-foot side, then divide by 2, and 20 percent of the result equals 21 feet. As the rear yard depth measured from the center of the building to the rear corner of the lot is 26 feet, plaintiffs find compliance with the ordinance. They do not, however, address the question whether it might also be a reasonable construction of the ordinance that it was intended to require that the 20-percent average depth of the rear yard extend for the full width of the lot from all portions of the building. Clearly, plaintiffs' building would not meet that test.

We need not here determine that question, as in this case the relevant issue is whether defendants acted under a reasonable belief the proposed construction violated the ordinance. Probable cause has been described as "such a state of facts as would lead a man of ordinary caution and prudence to believe that he has a justiciable claim to prosecute against the

defendant." (*Hulcher v. Archer Daniels Midland Co.* (1980), 88 Ill. App. 3d 1, 4, 409 N.E.2d 412, 415.) As there is no factual conflict in the evidence to be resolved in order to reach the question of probable cause, it is one of law for the court. *Banish v. Locks* (7th Cir. 1969), 414 F.2d 638, 640-41.

■■ We conclude as a matter of law defendants had probable cause to proceed with each of the ordinance-enforcement procedures of which plaintiffs complained. Where a governmental officer acts pursuant to a reasonable construction of the applicable law, he should not be penalized even if that construction is erroneous. *Agnew v. City of Compton* (9th Cir. 1956), 239 F.2d 226, *cert. denied* (1957), 353 U.S. 959, 1 L. Ed. 2d 910, 77 S. Ct. 868.

In addition to the stop order, ordinance violation charges and injunction remedies undertaken by defendants in seeking to enforce the zoning code, plaintiffs assert that other conduct by them supports their right to recover damages under section 1983. They argue the mayor had no authority to interfere with the decision of the building inspector; that his comment that he didn't care whether or not there was a violation "colors" as arbitrary the actions of defendants; that plaintiffs' arrests were unnecessary; and that defendants' amendment of the complaint for injunction, refusal to dismiss the appeal and delay in issuance of the occupancy permit evidenced actionable harassment of them.

We are not so persuaded. The zoning ordinance does not vest sole enforcement power in the building inspector, and a mayor has a duty to see to the enforcement of all municipal ordinances. (Ill. Rev. Stat. 1975, ch. 24, par. 6—4—7.) The mayor's isolated comment made in the context of the on-site discussion between the disputing parties and the complaining neighbors, while unfortunately worded, was little more than an expression of frustration in his effort to apply the terms of the ordinance to plaintiffs' proposed construction. It may not fairly be extended to the arbitrary characterization given to it by plaintiffs or said to color subsequent conduct of defendants. (See *Chicago Title & Trust Co. v. Tully* (1979), 76 Ill. App. 3d 336, 344, 395 N.E.2d 42, 48.) Nor was any evidence submitted that the mayor ordered the arrests; he merely directed the building inspector to charge plaintiffs with the zoning violation, and a complaint and notice to appear were served upon them. The police officers were not called to testify in trial, however, and the record does not disclose why they required plaintiffs to post bail rather than to appear in court in accordance with the notice on the complaint. (See Ill. Rev. Stat. 1975, ch. 38, par. 107—12; ch. 24, par. 1—2—9.) Defendants may not be held responsible for conduct which, on the basis of this record, appears to be an independent act of the officers. (*Monell v. Department of Social Services* (1978), 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018.) Neither was any evidence offered by plaintiffs in support of the

allegations of their complaint that the charges against them would be dismissed if plaintiff Strobot resigned his position on the village zoning board of appeals. The evidence as it relates to the delayed occupancy permit simply discloses that there was a delay; it does not suggest there was any improper basis for that delay. Finally, it is apparent that the village was authorized to seek injunctive relief from a zoning violation and could amend its complaint and appeal from the adverse judgment of the trial court without penalty. While litigiousness may become so egregious as to give rise to a tort of constitutional dimension (*Beker Phosphate Corp. v. Muirhead* (5th Cir. 1978), 581 F.2d 1187; *cf. California Motor Transport Co. v. Trucking Unlimited* (1972), 404 U.S. 508, 30 L. Ed. 2d 642, 92 S. Ct. 609), that circumstance is not present in this case.

■■ ■ Plaintiffs have also contended they were denied procedural due process in that they had a protected interest in the building permit with which defendants could not interfere absent prior notice and hearing (see *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701), and for which they were entitled to damages under section 1983. It is well established that a post-deprivation hearing can satisfy due process requirements (*Goffinet v. County of Christian* (1976), 65 Ill. 2d 40, 357 N.E.2d 442), and equally well established that one cannot complain of an alleged procedural due process violation where he declines to pursue the administrative remedy which is provided. (*Rawlings v. Department of Law Enforcement* (1979), 73 Ill. App. 3d 267, 391 N.E.2d 758.) We need not address this issue further under the circumstances of this case.

We conclude there was no evidence from which the jury could have found that defendants' conduct was arbitrary or capricious in violation of substantive or procedural due process subjecting plaintiffs to any injury of constitutional dimension. Section 1983 does not purport to displace State remedies or to usurp the legitimate use of municipal police power in zoning matters. *Brosten v. Scheeler* (N.D. Ill. 1973), 360 F. Supp. 608, *aff'd* (7th Cir. 1974), 495 F.2d 1375.

Our analysis has been thus far directed to count I in which plaintiffs sought relief pursuant to section 1983. It applies equally, however, to count II which was based upon the tort of malicious prosecution. Probable cause is also a complete defense to that action (*Hulcher v. Archer Daniels Midland Co.* (1980), 88 Ill. App. 3d 1, 409 N.E.2d 412; *Lyddon v. Shaw* (1978), 56 Ill. App. 3d 815, 372 N.E.2d 685), and we have determined as a matter of law that necessary element was present in support of defendants' conduct.

Defendants' post-trial motions for a new trial and judgment *n.o.v.* were denied by the trial court. We have applied the standard announced in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, to the evidence of this case and find that taken in its aspect most

favorable to plaintiffs it so overwhelmingly favors defendants that a contrary verdict cannot stand.

For these reasons the judgment of the trial court is reversed, and judgment *n.o.v.* is entered in favor of defendants.

Reversed.

SEIDENFELD, P. J., and WOODWARD, J., concur.