DENNIS LAMOINE FRYE, Plaintiff-Appellant, v. BENNIE O'NEILL *et al.*, Defendants-Appellees (Byron Cudmore *et al.*, Defendants).

Fourth District   No. 4—87—0643

Opinion filed March 9, 1988.

Leahy Law Offices, of Springfield (Mary Lee Leahy and Cheryl Redfield Jansen, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE KNECHT delivered the opinion of the court:

The plaintiff, Dennis Frye, appeals an order of summary judgment entered with respect to his lawsuit against defendants Bennie O'Neill and Joe Williams. Frye's claims against O'Neill and Williams are premised on alleged malicious prosecution and civil rights violations on their part. We affirm as to defendant Williams and reverse and remand as to defendant O'Neill.

Count I of Frye's second-amended complaint, which is premised on an alleged malicious prosecution, states that at all relevant times, O'Neill was a trooper with the Illinois State Police and Williams was employed as an investigator with the Illinois Secretary of State's office. Count I further alleges Frye's indictment by the Sangamon County grand jury on August 8, 1985, on charges of unlawful delivery of a controlled substance. According to Frye's complaint, O'Neill and Williams, together with Assistant State's Attorney Byron Cudmore (who was also named as a defendant but is not a party to this appeal), were "responsible" for Frye's indictment, and O'Neill "in no way verified that the person who gave him the controlled substance was [Frye]." Moreover, Williams "without cause or reason, identified [Frye] as the person who delivered the controlled substance."

Count I further alleges a warrant for Frye's arrest was issued, and Frye was arrested and detained on August 9, 1985. Also, the defendants persisted in prosecuting the charge against Frye. The defendants subsequently admitted in charging Frye they charged the wrong person and they had relied on "bad information." Frye further stated in count I the defendants acted without probable cause when they caused the indictment and arrest warrant to be filed and when they caused the charge to continue to be prosecuted in that they had no evidence indicating he had committed a crime. Also, Frye alleged defendants acted maliciously in causing the complaint against him to be filed and in causing the continued prosecution of the charge against him, because "they acted out of prejudice toward [him] and out of a desire to harm, wrong and annoy" him. Count I concludes with an allegation of the damages which Frye allegedly suffered as a result of O'Neill's and Williams' actions, as well as an allegation their

actions were "wilful, wanton, malicious, and oppressive" in support of a claim for punitive damages.

Count II of Frye's complaint, which is premised on an alleged malicious prosecution or false arrest of Frye which violated his Federal constitutional rights guaranteed by section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1982)), alleges O'Neill's and Williams' statuses, Frye's arrest on August 9, 1985, on a charge of unlawful delivery of a controlled substance, which allegedly occurred as a result of O'Neill's and Williams' accusations, and O'Neill's nonverification Frye was the person who delivered the controlled substance, as well as Williams' identification of Frye as that person "without reason or cause." Count II also alleges defendants admitted they had charged the wrong person, had relied on " 'bad' information" and had no reasonable information indicating Frye had committed any crime. Count II further alleges Frye's entitlement to the protections of the fourth and fourteenth amendments to the United States Constitution and the performance of defendants' conduct under color of law. Count II concludes with an allegation of Frye's damages and an allegation O'Neill's and Williams' conduct was performed in knowing violation of Frye's rights, or with malicious disregard thereof, in support of a claim for punitive damages.

O'Neill and Williams filed a motion for summary judgment on June 15, 1987. On the same date, they filed affidavits in support of the motion. In his affidavit, Williams stated he is employed as an investigator with the Illinois Secretary of State's office. In early May 1985, he encountered O'Neill, who informed him he was trying to establish the identity of a black man who in February of that year had sold O'Neill cocaine in the vicinity of the John Hay Homes. Williams had previously worked for six years as a security officer at the Hay Homes and agreed to help O'Neill discover the identity of the drug dealer. On May 23, 1985, O'Neill again contacted Williams. O'Neill apparently stated to Williams either at that time or previously he believed the drug dealer worked for the cable television company. On the basis of that fact, Williams felt he might know who the drug dealer was. Williams believed only one black man worked for the cable television company.

Williams stated he telephoned Leon Shanklin, chief of security at the Hay Homes, and related to him the information he had received from O'Neill. Shanklin told Williams the only black man he knew who worked for the cable television company was Dennis Frye, whom he had known in the East St. Louis-Alton, Illinois, area. Williams relayed that information to O'Neill and had no other involvement in the mat-

ter. Although Williams had observed Frye in the area of the Hay Homes on several occasions, their only contact consisted of an occasional exchange of greetings.

O'Neill stated in his affidavit he is a special agent with the Department of Criminal Investigation of the Illinois State Police (Department). In late January and early February 1985, the Department began a large-scale investigation of drug trafficking in the city of Springfield. The Department received information a subject known as Albert Jackson or "A.J." was conducting a cocaine delivery operation at 306 North 15th Place, which is located in the Hay Homes in Springfield. In early February 1985, O'Neill began working undercover as a maintenance employee at the Hay Homes in order to observe whether any drug trafficking was occurring. On February 28, 1985, O'Neill and a confidential informant, backed by a surveillance team, went to the apartment at 306 North 15th Place in order to attempt to purchase cocaine from "A.J." They were advised "A.J." was not present, but would return later. While leaving the area, an unidentified black man approached them outside the apartment. When they indicated their desire to purchase cocaine, the unidentified black man asked them to reenter the apartment. That individual then sold O'Neill for $200 a substance subsequently identified as cocaine. The individual who sold O'Neill the cocaine stated he was known as both "Dirty Red" and "Tigo." After leaving the apartment, the informant who was with O'Neill stated the man who sold O'Neill the cocaine was known as "Montigo."

After O'Neill unsuccessfully checked several sources, including law enforcement agencies, for information concerning the identify of an individual known as "Tigo" or "Montigo," O'Neill's informant advised him that person was Lamont Wilson, who worked at the cable television company. The informant further stated he had at one time dated Wilson's sister. A computer check revealed Wilson had been imprisoned in Illinois, and a photograph of him was available. Upon viewing the photograph of Wilson, O'Neill realized he was not the person who sold him cocaine on February 28, 1985.

On May 23, 1985, O'Neill met with defendant Williams, who was known to O'Neill to have previously worked as a security guard at the Hay Homes and had some familiarity with the residents and other persons in the Hay Homes area. Williams stated he knew an individual answering the description of the person who sold O'Neill the cocaine and who worked for the cable television company. Although Williams believed he knew that individual's identity, he was not sure and needed to make a telephone call in order to check his information.

Williams made the telephone call in O'Neill's presence. At the conclusion of the call, Williams told O'Neill he believed the drug dealer was Dennis Frye, formerly of the Alton area, because only one black man worked for the cable company. A computer check revealed a Dennis Frye had previously been arrested for a traffic offense in Alton and was then living at 1614 South 17th Street in Springfield. No photograph or fingerprints of Frye were available from the Alton police department.

O'Neill further stated in his affidavit the drug investigation concluded in late July 1985, and the results were presented by special agent David King to a Sangamon County grand jury on August 8, 1985. On August 9, 1985, a command post was established at Camp Lincoln from which arrest teams were dispatched to serve warrants on the approximately 40 people indicted by the grand jury as a result of the drug investigation. As the arrest warrants were served, the arrestees were brought to Camp Lincoln in order to be identified by members of the investigation teams, processed and transported to the Sangamon County jail. O'Neill was present at Camp Lincoln, but Frye was not served with an arrest warrant prior to the dismantlement of the command post following the arrest of most of the suspects. Therefore, Frye was immediately taken to the Sangamon County jail after the arrest warrant was served on him.

On September 19, 1985, O'Neill received the "arrest packet" on Frye, which included a photograph taken at the time of his arrest. O'Neill realized Frye was not the person who sold him cocaine on February 28, 1985, and so advised the Sangamon County State's Attorney's office on the same day he received Frye's "arrest packet." Also, on September 19, 1985, O'Neill learned there was another black man employed by the cable television company. In the company of William Brown, who is also employed by the Department of Law Enforcement and was sold cocaine by the person whom O'Neill thought was Frye, O'Neill went to the Times-Mirror Cable Company. There, he and Brown identified Robert Montgomery as the man who sold them cocaine and arrested him. Montgomery later entered guilty pleas as a result of the investigation. Prior to his conversation with Williams on May 23, 1985, O'Neill had no knowledge of Dennis Frye.

On August 13, 1987, the circuit court granted O'Neill's and Williams' motion for summary judgment.

In urging reversal of the circuit court's summary judgment order, Frye notes the sole contention which O'Neill and Williams advanced in the circuit court in support of their motion for summary judgment with regard to his malicious prosecution claim was there was no evi-

dence they acted with malice toward Frye. Frye contends the record presents a factual question as to whether Williams and O'Neill acted with malice in causing him to be prosecuted. In support of this contention, Frye relies upon O'Neill's and Williams' failure to attempt to confirm, prior to his arrest, whether a Dennis Frye worked for the cable television company and, if so, whether Frye was the individual who sold O'Neill the cocaine. Frye also places reliance on O'Neill's immediate identification of Montgomery as the person who sold him the cocaine by going to the cable television company after he had seen a photograph of Frye. Frye contends on the basis of the facts stated in Williams' and O'Neill's affidavits, as well as the unrefuted allegations of his complaint, a reasonable person might conclude his prosecution was inconsistent with good faith and infer the presence of malice.

With respect to count II, Frye contends there is no dispute concerning whether O'Neill and Williams were acting under color of law or whether he was damaged by their actions. He further asserts malice is not an element of an action seeking damages for a violation of section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1982)), and the question of whether O'Neill and Williams had probable cause to bring about his arrest is for the trier of fact to determine. For these reasons, Frye requests reversal of the summary judgment entered in favor of O'Neill and Williams.

O'Neill and Williams assert summary judgment was properly entered in their favor because the undisputed facts show the absence of malice on their part and the presence of probable cause for their bringing about Frye's prosecution and arrest. They argue there was thus no issue of material fact as to whether they engaged in malicious prosecution of Frye. In support of this argument, they assert Frye's complaint contains only conclusory allegations of "prejudice" and "desire to harm, wrong and annoy" Frye. O'Neill and Williams further rely on statements in their affidavits to the effect they had no significant prior contact with Frye and they contacted reliable sources to verify their information concerning Frye. O'Neill and Williams also argue malice may not be inferred from a lack of probable cause to bring about a prosecution where there is absolutely no other evidence of malice.

O'Neill and Williams additionally contend since they did not arrest Frye and were not present when he was arrested, count II of Frye's complaint must be construed as alleging a violation of Frye's civil rights on the basis of a malicious prosecution as opposed to an unlawful arrest. They assert because malice on the part of the defendant is an essential element of a violation of one's civil rights resulting from

a malicious prosecution and there is no evidence of malice toward Frye on their part, summary judgment was properly entered in their favor as to count II.

Finally, Williams contends he had an insufficient connection with the prosecution of Frye to support a finding he was responsible for a malicious prosecution of Frye. In support of this assertion, he observes he merely relayed to O'Neill information concerning his belief as to the identity of the individual who sold cocaine to O'Neill after attempting to corroborate that information, he did not report Frye had committed an offense, and he did not act in an official capacity.

In his reply argument, Frye asserts in determining whether a prosecution was malicious, the trier of fact may infer malice from circumstantial evidence which is inconsistent with good faith. He contends the trier of fact could infer malice from O'Neill's failure to further investigate the identity of the person who sold him cocaine before causing Frye's arrest. Frye also states contrary to O'Neill's and Williams' contentions, count II of his complaint is premised on a violation of his civil rights stemming from his false arrest, which was caused by Williams and O'Neill. He asserts malice or specific intent on the part of the defendant is not an essential element of a civil rights violation and even if it were, applicable principles of State law which have been adopted by Federal courts in civil rights cases involving alleged malicious prosecutions establish malice may be inferred from circumstantial evidence which is inconsistent with good faith.

With respect to the question of whether there was probable cause for his prosecution, Frye contends O'Neill's and Williams' admissions they relied on bad information in causing him to be arrested is relevant to whether they had probable cause to bring about his arrest, there is no factual basis for O'Neill's and Williams' conclusory statements as to the reliability of the sources of information on which they relied, and contrary to O'Neill's assertions, he did not do all he could to substantiate the identity of the person who sold him cocaine.

Frye further contends Williams waived his argument he did not act in an official capacity by not presenting that argument to the trial court. Also, Frye states whether Williams acted in an official capacity is immaterial if he willingly assisted the State or its agents in bringing about Frye's arrest. Frye contends at a minimum, the record presents genuine issues of material fact as to whether Williams promoted or instituted his prosecution.

■■ Summary judgment is properly entered when the pleadings, depositions, and admissions, together with any affidavits, demonstrate there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Clifford-Jacobs Forging Co. v. Capital Engineering & Manufacturing Co.* (1982), 107 Ill. App. 3d 29, 437 N.E.2d 22.) In determining whether a motion for summary judgment should be granted, the evidence must be construed strongly against the movant and liberally in favor of the opponent. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50.) A motion for summary judgment should be denied if the facts admit of more than one conclusion or inference, including one unfavorable to the moving party. *Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 422 N.E.2d 1146.

■ Frye's claims are in part premised on alleged violations of section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1982)). This provision affords broad protection to Federal constitutional rights, including the fourth amendment right to be free from unreasonable searches and seizures (*McIntosh v. Arkansas Republican Party—Frank White Election Committee* (8th Cir. 1987), 816 F.2d 409; see *Baker v. McCollan* (1979), 443 U.S. 137, 61 L. Ed. 2d 433, 99 S. Ct. 2689) and the fourteenth amendment right to due process of law (*Hague v. Committee for Industrial Organization* (1939), 307 U.S. 496, 83 L. Ed. 1423, 59 S. Ct. 954), which includes the right to be free from prosecutions which are carried out maliciously and without probable cause (*Wheeler v. Cosden Oil & Chemical Co.* (5th Cir. 1984), 734 F.2d 254).

■ We first consider whether the circuit court properly entered summary judgment in favor of Williams. As Frye points out, Williams' argument he cannot be held liable for malicious prosecution of Frye because the causal connection between his actions and Frye's prosecution was too attenuated was not presented to the circuit court. We are not, however, precluded from considering this matter as a basis for affirmance of the circuit court's judgment in favor of Williams, since we may affirm a circuit court judgment on any basis appearing of record. *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197.

The only authority cited in support of Frye's contention there is a question of material fact whether there is a sufficient causal connection between Williams' actions and Frye's prosecution to render Williams liable to Frye for damages stemming from Frye's prosecution is a section of a compilation of Federal jury instructions and supporting case citations (3 E. Devitt, C. Blackmar, & M. Wolff, Federal Jury Practice & Instructions—Civil §103.05 (4th ed. 1987)). The pattern jury instruction included in that section does state if a defendant was a willing participant in assisting the State or its agent in the commis-

sion of a civil rights violation, the defendant is liable for damages, even though he held no official position or employment. However, *Butler v. Goldblatt Brothers, Inc.* (7th Cir. 1978), 589 F.2d 323, cited in the same section, refutes Frye's contention Williams may be held liable for a violation of section 1983 on the basis of an unlawful arrest of Frye.

*Butler* involved the arrest of six employees of a Goldblatt store on the basis of information they planned to kill a fellow employee who testified against a former Goldblatt employee. Goldblatt merely relayed the information concerning the alleged murder plot to the police, who subsequently arrested the plaintiffs. The court upheld a trial court judgment in favor of plaintiffs and against the arresting police officers on a section 1983 illegal arrest claim. Because, however, Goldblatt did nothing more than supply information to the police who then acted on their own initiative in arresting the plaintiffs, the court held Goldblatt's actions did not amount to joint participation with State officials in an action prohibited by section 1983. Therefore, the court set aside a jury verdict in favor of one of the plaintiffs and against Goldblatt on the basis of a section 1983 false arrest claim.

■ In the present case, Williams merely responded to a police officer's request for information. He did not urge O'Neill to file charges against Frye, and whether to seek prosecution of Frye on the basis of the information which Williams provided was O'Neill's decision. For these reasons, we hold the circuit court properly entered summary judgment in favor of Williams on count II of Frye's complaint, assuming that count is premised on an alleged unlawful arrest.

■ If count II of Frye's complaint is premised on a purported malicious prosecution of Frye which infringed on his Federal constitutional rights, we must likewise hold summary judgment was properly entered as to Williams. Federal courts which have considered the question of section 1983 liability for malicious prosecution have generally relied upon State law definitions of malicious prosecution. (See *Terket v. Lund* (7th Cir. 1980), 623 F.2d 29.) An individual's good-faith response to a law enforcement officer's request for information cannot form the basis for a malicious prosecution action. *Moses v. Revco Discount Drug Centers of Georgia, Inc.* (1982), 164 Ga. App. 73, 296 S.E.2d 384.

■ As previously indicated, there is no evidence Williams did anything more than respond to O'Neill's request for information concerning the identity of the cocaine dealer. Williams verified his information before relaying it to O'Neill. Since O'Neill, and not Williams, was conducting the investigation into drug dealing, Williams had no

duty to attempt to discover additional information relative to the drug dealer's identity. We hold an inference of bad faith on the part of Williams cannot be drawn from these facts. Therefore, Williams could not have committed the tort of malicious prosecution in responding to O'Neill's request for information concerning the identity of the drug dealer. Since Williams did not, as a matter of law, instigate a common law malicious prosecution of Frye, there is obviously no basis for finding Williams maliciously prosecuted Frye in violation of section 1983. For the above reasons, we hold the circuit court properly entered summary judgment in favor of Williams with respect to both counts of Frye's complaint.

■ We now turn to the question of whether the circuit court properly entered summary judgment in favor of O'Neill as to count I of Frye's complaint, which is premised on O'Neill's alleged malicious prosecution of Frye. The elements of the tort of malicious prosecution are:

> " '(1) [T]he commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.' " (*Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 45, 411 N.E.2d 229, 232, quoting *Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 475, 376 N.E.2d 991, 993.)

Liability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff. Rather, liability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present. 54 C.J.S. *Malicious Prosecution* §§18, 19 (1987).

As Frye points out, O'Neill's motion for summary judgment was premised solely on the ground O'Neill did not act with malice in instigating the prosecution of Frye. This does not, however, preclude us from considering whether O'Neill acted with probable cause, since the existence of probable cause for O'Neill's actions would provide a basis for affirmance of the circuit court's summary judgment as to count I. See *Cuthbert*, 78 Ill. App. 3d 562, 396 N.E.2d 1197.

■ For purposes of a malicious prosecution action, probable cause is defined as " 'a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion that the person arrested is guilty' " of the alleged offense for which he is arrested. (*Freides v.*

*Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 295-96, 211 N.E.2d 286, 288-89, quoting *Harpham v. Whitney* (1875), 77 Ill. 32, 42.) Whether the relevant facts, viewed in the light most favorable to the plaintiff, constitute probable cause for instituting a criminal prosecution is a question of law which the court must determine. (*Angelo v. Faul* (1877), 85 Ill. 106; *Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 500 N.E.2d 120.) To the extent our decision in *Hulcher v. Archer Daniels Midland Co.* (1980), 88 Ill. App. 3d 1, 409 N.E.2d 412, indicates otherwise, we are of the opinion the statements in question were mistakenly made, and we decline to follow that decision.

We conclude O'Neill did not have probable cause to bring about the prosecution of Frye. The information available to O'Neill after he received confirmation Frye had been convicted of an offense in Alton and then lived in Springfield did not specifically link Frye to drug dealing. A Lamont Wilson, who purportedly worked for the cable television company, had been mentioned to O'Neill as the person who sold him cocaine. Subsequent investigation established Wilson was not the cocaine dealer. Later, O'Neill received via Williams hearsay information the drug dealer was Frye who, according to the information, was the only black man who worked for the cable television company. O'Neill apparently had no knowledge of the identity of the person who informed Williams Frye was the only black man who worked for the cable television company. O'Neill made no effort whatsoever to corroborate whether Frye was involved in drug dealing or whether he was the only black man who worked for the cable television company (*cf. Ely*, 149 Ill. App. 3d 752, 500 N.E.2d 120), and no one who was present at the time of the cocaine sale identified Frye as the person who sold O'Neill the cocaine (*cf. Angelo*, 85 Ill. 106).

O'Neill's knowledge Wilson worked for the cable television company, considered in view of Williams' statement Frye was the *only* black man who worked for the cable television company, seriously weakened the believability and reliability of the information concerning the identity of the drug dealer which Williams relayed to O'Neill. Because of this factor, O'Neill's apparent lack of knowledge as to the identity of the individual who supplied the information which Williams relayed to O'Neill, and the total absence of any evidence specifically linking Frye to drug dealing, we hold O'Neill did not have probable cause for instigating Frye's prosecution. A person of ordinary caution and prudence, relying on the information available to O'Neill at the time of Frye's arrest, simply could not have believed or entertained a

strong and honest suspicion Frye was the person who sold cocaine to O'Neill.

The parties to this appeal dispute whether, for purposes of a malicious prosecution action, malice may be inferred from lack of probable cause alone. Some decisions appear to hold it may (*e.g., Hulcher*, 88 Ill. App. 3d 1, 409 N.E.2d 412; *Ferrell v. Livingston* (1951), 344 Ill. App. 488, 101 N.E.2d 599), while others appear to hold malice may not be inferred solely from lack of probable cause (*e.g., Montgomery v. Harms* (1953), 349 Ill. App. 245, 110 N.E.2d 522; *Shelton v. Barry* (1946), 328 Ill. App. 497, 66 N.E.2d 697). The key to resolution of this apparent disagreement in the decisions is found in the supreme court's opinion in the early case of *Harpham v. Whitney* (1875), 77 Ill. 32. There the court stated:

> "To maintain an action for malicious prosecution, it must appear that there was not probable cause for the prosecution, and also that the defendants were actuated by malice in instituting the prosecution. There must be both want of probable cause and malice. If the law imputed malice from want of probable cause, then there would be no distinct requirement of malice, but want of probable cause would be the sole element necessary. It is often said, the jury may infer malice from the want of probable cause. They may do so under certain circumstances, but not in all cases. Malice is in no case *a legal presumption* from the want of probable cause, it being for the jury to find from the facts proved, where there was no probable cause, whether there was malice or not. 1 Hilliard on Torts, 486. And if the defendant can not justify by proof of probable cause, he may still rebut the presumption of malice by showing facts and circumstances calculated to produce at the time, on the mind of a prudent and reasonable man, a well-grounded belief or suspicion of the party's guilt. Ibid. 515." (*Harpham*, 77 Ill. at 38-39.)

On the basis of the above statement, we conclude the trier of fact may infer malice from lack of probable cause if there is no other credible evidence which refutes that inference.

Where two conflicting inferences may be drawn from the evidence—one of good-faith actions on the part of the defendant and the other of actions inconsistent with good faith or, in other words, malicious actions—the question whether the defendant acted with malice is for the trier of fact to determine. In order to create a question for the trier of fact, it is not incumbent upon the plaintiff to present direct affirmative evidence of lack of good faith on the part of the defendant. Rather, circumstantial evidence which would support an in-

ference of malice is sufficient. *Mack v. First Security Bank* (1987), 158 Ill. App. 3d 497, 511 N.E.2d 714.

■■ On the basis of the evidence of record, we conclude the trier of fact could properly draw an inference of a lack of good faith, and consequently an inference of malice, from O'Neill's bringing about Frye's prosecution on the basis of the information available to him at the time. For the above reasons, we hold the circuit court erred in entering summary judgment in favor of O'Neill with respect to count I of Frye's complaint.

We finally consider the circuit court's entry of summary judgment in favor of O'Neill as to count II of Frye's complaint. The parties are not in agreement as to the cause of action sought to be stated in that count. O'Neill's argument proceeds on the basis count II is premised on an alleged malicious prosecution which violated Frye's rights guaranteed by section 1983 (42 U.S.C. §1983 (1982)); Frye contends count II states a cause of action premised on an unlawful arrest in violation of section 1983. We need not resolve this dispute, for we conclude the circuit court improperly entered summary judgment in favor of O'Neill on this count, regardless of whether it is intended to allege a section 1983 violation based on a malicious prosecution or whether the civil rights violation intended to be stated therein is a false arrest.

■■ As previously indicated, Federal courts have generally adopted State law definitions of malicious prosecution for purposes of determining whether a plaintiff's Federal constitutional rights guaranteed by section 1983 were violated by means of a malicious prosecution. (*Terket v. Lund* (7th Cir. 1980), 623 F.2d 29.) We have previously held the record presents a factual question whether O'Neill perpetrated a common law malicious prosecution of Frye. O'Neill does not contend he would not be guilty of having violated Frye's Federal constitutional rights if it were found he instigated a common law malicious prosecution of Frye. Therefore, we hold the circuit court improperly entered summary judgment in favor of O'Neill as to count II of Frye's complaint, if that count is intended to state a cause of action for a malicious prosecution of Frye in violation of section 1983.

■■ O'Neill not being physically present when Frye was arrested is not a defense to a section 1983 false arrest claim by Frye. In order for a defendant to be liable under section 1983 for the filing of false charges against a plaintiff, there must be a causal connection between the defendant's actions and the filing of the charges. (See *Black v. Stephens* (3d Cir. 1981), 662 F.2d 181.) At common law, liability for false arrest extends to all who instigated or were the legal cause of the unlawful arrest. (35 C.J.S. *False Imprisonment* §§37, 38 (1960).)

Here the facts clearly demonstrate Frye would not have been arrested but for O'Neill's actions. There is thus a sufficient causal connection between O'Neill's actions and Frye's arrest to permit Frye to maintain a section 1983 action against O'Neill on the basis of an alleged false arrest.

■ In defining the concept of probable cause for purposes of section 1983 unlawful arrest actions, Federal courts appear to have imposed a somewhat higher standard of care on law enforcement officials than applies with respect to common law malicious prosecution actions. The quantum of evidence necessary to establish probable cause for an arrest, and thus defeat a section 1983 unlawful arrest claim, is a function of information and exigency. A smaller quantum of evidence is needed to establish probable cause where there is a possibility a suspect may flee, a crime may be repeated, or obtaining further information would interfere with the other duties of a law enforcement officer than is necessary where none of these factors are present. Generally, reasonable avenues of investigation must be pursued. Although the police must be allowed some margin of error, they must utilize the means at hand to minimize the risk of error. *BeVier v. Hucal* (7th Cir. 1986), 806 F.2d 123.

■ In Federal civil rights actions, whether there was probable cause for an arrest is a question of fact if there is room for a difference of opinion as to the matter. This is so because the underlying issue is the reasonableness of the defendant's actions, which in negligence cases, is a classic jury question. *Llaguno v. Mingey* (7th Cir. 1985), 763 F.2d 1560, *cert. dismissed* (1986), 478 U.S. 1044, 92 L. Ed. 2d 783, 107 S. Ct. 16.

None of the cases cited by the parties hold it is necessary for a plaintiff to establish malice in order to prevail in a section 1983 unlawful arrest action.

■ In the present case, there were no exigent circumstances present. O'Neill apparently had no evidence Frye was about to flee and had no concrete evidence Frye planned to engage in further drug dealing. There are no indications O'Neill's being present when Frye was served with an arrest warrant would have hampered O'Neill in the performance of his other law enforcement duties. O'Neill's presence at the time and place of Frye's arrest was a means available to O'Neill of minimizing the risk the wrong person would be arrested for having delivered cocaine to him. The record is silent as to why O'Neill did not avail himself of this opportunity to minimize the risk of error. Under these circumstances, a question of material fact is presented as to whether O'Neill instigated an unlawful arrest which violated Frye's

Federal constitutional rights guaranteed by section 1983.

The circuit court's summary judgment order is affirmed with respect to defendant Williams as to both counts of Frye's complaint; the circuit court's summary judgment order is reversed with respect to defendant O'Neill as to both counts of Frye's complaint. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

LUND and SPITZ, JJ., concur.