381 S.E.2d 253

**Glenda HESTON**

v.

**MARION COUNTY PARKS AND RECREATION COMMISSION.**

**No. 17928.**

Supreme Court of Appeals of West Virginia.

May 16, 1989.

George R. Higinbotham, Fairmont, for appellant.

Stephen R. Brooks, Furbee, Amos, Webb & Critchfield, Fairmont, for appellee.

PER CURIAM:

This is an appeal by Glenda Heston from a final order of the Circuit Court of Marion County. Ms. Heston asserts that the trial court erred in finding that she failed to prove by a preponderance of the evidence his case of sex discrimination. On appeal, Ms. Heston argues she is entitled to relief pursuant to the West Virginia Human Rights Act, W.Va.Code § 5–11–1 *et seq.* (1979), and Title VII of the Civil Rights Act §§ 2000e *et seq.* (1964). We disagree; therefore, we affirm the findings of the trial court.

I.

In April, 1983, Ms. Heston was hired as a "Bookkeeper/Administrative Assistant" for the Marion County Parks and Recreation Commission (Commission) at an annual salary of $9,000.00. During the course of her employment, Ms. Heston was led to believe that her employment would continue so long as her work was competently performed or unless good cause existed for her termination.

On September 12, 1983, the Commission broadened Ms. Heston's job responsibilities to include the duties and title of "Administrative Assistant in Charge of Finances." Effective with this change was a salary increase to $13,800.00, retroactive to September 1, 1983. Meanwhile, the Director of the Commission, Michael Vaughan, was forced to take a leave of absence from his job for health reasons. Ms. Heston was named acting director during Mr. Vaughan's absence. Mr. Vaughan resigned on November 14, 1983.

Because of severe financial difficulties, the Commission laid off its entire staff from January, 1984 through March, 1984. The Commission's financial woes further required it to delay the hiring of a new director and to keep Ms. Heston temporarily in charge of operations at an annual salary of $14,628.00, effective April 2, 1984. The Commission agreed to increase Ms. Heston's salary 10% annually, so long as Ms. Heston remained in the position of acting director. In the spring of 1985, the Commission considered keeping Ms. Heston

in charge of operations and hiring a second person to be in charge of the recreational programs. The new position would be titled "Program Planner", with a maximum salary of $19,216.00. In May of 1985 Ralph LaRue was hired by the Commission, not as a program planner, but as the director of the agency, at a salary of $17,-500.00.

Mr. LaRue recommended to the Board of Directors (the Board) that Ms. Heston be reinstated to her position as bookkeeper and that the title "Administrative Assistant" be eliminated. Mr. LaRue asserted that as director, he would assume the role of administrator and that it would be a waste of resources to have two individuals in charge of administration.

On July 1, 1985, the Board met and adopted Mr. LaRue's recommendation. Accordingly, a motion was passed to change Ms. Heston's job title from "Bookkeeper/Administrative Assistant" to "Bookkeeper/Secretary", and to change her job description. The Board also voted to reduce Ms. Heston's salary from $15,505.00 to $13,600.00.[1]

Believing that she had been wrongfully demoted, Ms. Heston retained the services of an attorney. In a meeting before the Board on August 27, 1985, Ms. Heston's lawyer objected to the change in Ms. Heston's job title, and contended that the Board's actions on July 1, 1985 violated Ms.

Heston's due process rights of notice and an opportunity to be heard.

On September 16, 1985, after conferring with counsel, the Board passed a motion to reinstate Ms. Heston to the position of "Bookkeeper/Administrative Assistant" with a salary of $15,505.00, along with back pay. From September 9, 1985 until February, 1986, Ms. Heston did not receive any indication that she was performing her duties in an unsatisfactory manner.

In a meeting on February 17, 1986, the Board once again considered a motion to change Ms. Heston's job title and description. The motion proposed to change Ms. Heston's annual salary to an hourly rate of $6.50 an hour[2] and was made effective April 1, 1986, pending Ms. Heston's notification of the proposed change and an opportunity for her to be heard. After receiving notification,[3] Ms. Heston objected to the proposed hearing because it was scheduled before the Commission, which she asserted was a biased tribunal. Ms. Heston demanded a hearing before a different tribunal. This request was denied. Ms. Heston did not appear at the hearing; consequently, the proposed changes were made effective April 1, 1986.

On April 18, 1986, Ms. Heston filed a complaint against the Commission in the Circuit Court of Marion County. The action was brought pursuant to Title VII of the Civil Rights Act, §§ 2000e et seq. (1964), the West Virginia Human Rights

1. Ms. Heston's salary had previously been increased from $14,628.00 to $15,505.00.

2. An hourly rate of $6.50 at forty hours per week is equivalent to $13,520.00 a year.

3. The notice provided:
NOTICE OF CHANGES IN STATUS AND OF RIGHT TO HEARING
TO: Glenda Heston
FROM: Ralph LaRue
DATE: February 27, 1986
At the February 17, 1986, meeting of the Marion County Parks and Recreation Commission, the Commission considered the following action:
1. Changing the job title of Glenda Heston from "bookkeeper/administrative assistant" to "bookkeeper/secretary;"
2. Changing the compensation for that position from a salary to a present hourly rate of $6.50 per hour with a maximum of forty (40) hours per week and two (2) weeks vacation per year;
3. Changes 1 and 2 are to be effective April 1, 1986, subject to Ms. Heston's being given the right to a hearing before the Commission prior to the effective date.
You are hereby notified that you have the right to a hearing before the Marion County Parks and Recreation Commission with regard to the implementation of the changes set forth above. The hearing shall be held on 10th, March, 1986, beginning at 7:00 p.m. You may appear with a lawyer or representative of your choice and may present such witnesses or other evidence as you desire.
Please notify Mr. LaRue on or before March 5, 1986, if you wish to appear before the Commission for the hearing.

Act, W.Va.Code § 5–11–1, *et seq* (1979), and 42 U.S.C. § 1983 (1979). In her complaint, Ms. Heston alleged that she was denied due process of law because she was not provided proper notice of a hearing, nor was the proposed hearing before an unbiased tribunal. Ms. Heston further contended that she had been discriminated against by the Board.

After a trial without a jury, the trial court found: (1) the Commission had valid fiscal and administrative rationale for the action it had taken on April 1, 1986; (2) Ms. Heston failed to meet her burden or proof in her discrimination complaint; and (3) Ms. Heston had waived any procedural due process claim by failing to avail herself of the administrative procedures offered. It is from this adverse ruling that Ms. Heston appeals.

## II.

Ms. Heston contends that the trial court erred in finding that she failed to meet her burden of proof in her discrimination complaint under the West Virginia Human Rights Act and Title VII of the Civil Rights Act. Both the state and federal provisions prohibit employers from discriminating against an individual with respect to the terms and conditions of employment. *See* W.Va.Code § 5–11–13 (1967); 42 U.S.C. 2000e–2(a)(1) (1964).

■ In *Shepherdstown V.F.D. v. W.Va. Human Rights Comm'n,* 172 W.Va. 627 at 636–37, 309 S.E.2d 342 at 352 (1983), we adopted the evidentiary standards for unlawful employment discrimination under Title VII and applied those standards to claims of unlawful discrimination pursuant to our Human Rights Act. *E.g., Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Thus, the evidentiary standards for unlawful discrimination under Title VII and the West Virginia Human Rights Act are identical. Hence, our discussion herein addresses both of Ms. Heston's claims.

The evidentiary standard for discrimination cases was best capsulized in *Texas Dept. of Community Affairs v. Burdine, supra:*

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. (citation omitted).

450 U.S. at 252–53, 101 S.Ct. at 1093 *citing McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677; syllabus point 3, *Shepherdstown V.F.D. v. W.Va. Human Rights Comm'n, supra.* Under this framework, the plaintiff must first succeed in proving a prima facie case of discrimination.

In syllabus point 3 of *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986), we held:

> In order to make a prima facie case of employment discrimination ... the plaintiff must offer proof of the following:
>
> (1) That the plaintiff is a member of a protected class.
>
> (2) That the employer made an adverse decision concerning the plaintiff.
>
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

Under the test prescribed in *Conaway,* Ms. Heston clearly meets the first two criteria. In order to meet the third prong, the plaintiff must show "... some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. at 170–171, 358 S.E.2d at 429–30. The evidence could come in the form "... of unequal or disparate

treatment between members of a protected class and others." *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. at 171, 358 S.E.2d at 430.

At trial, minutes from the Commission's July 1, 1985 meeting were introduced, which Ms. Heston alleges reflect disparate treatment of Ms. Heston by the Commission. The minutes documented that at the same time Ms. Heston's salary was decreased, Mr. LaRue's salary was increased; thus, the trial court found this evidence sufficient to establish a prima facie case of discrimination. Once a prima facie case is established, "... the burden then shifts to the employer to show some nondiscriminatory reason for the decision." *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. at 171, 358 S.E.2d at 430.

■ A review of the record indicates that the employer successfully met its burden of showing a nondiscriminatory reason for the changes in Mr. LaRue's and Ms. Heston's salaries. Specifically, Mr. LaRue explained that when he was originally hired, there was some confusion among Commission members whether his salary included fringe benefits. The members finally compromised and agreed to pay for Mr. LaRue's health insurance. This compromise was implemented during the Commission's July 1, 1985 meeting.[4]

Regarding the change in Ms. Heston's job title, Mr. LaRue explained that Ms. Heston was originally hired as a Bookkeeper/Administrative Assistant. Her responsibilities were later expanded and her title changed to "Administrative Assistant in charge of finances". Her salary at that time was $13,800.00. When Michael Vaughan resigned, Ms. Heston was asked to assume the responsibilities of Acting Director. As compensation for temporarily assuming these additional duties, Ms. Heston was given a salary increase. When Ralph LaRue was hired as Director, he reassumed several of the duties Ms. Heston had temporarily been assigned. Because Ms. Heston was no longer the Acting Director, and because of severe fiscal problems,[5] the Commission reinstated her to her original position and reduced her salary to reflect the decrease in her responsibilities.

■ Once the employer was successful in rebutting the presumption of discrimination, Ms. Heston then had to prove, by a preponderance of the evidence, that the reasons offered by the respondent were merely a pretext for the unlawful discrimination. Syllabus point 3, in part, *Shepherdstown V.F.D. v. W.Va. Human Rights Comm'n, supra.* Ms. Heston failed to meet this burden. Ms. Heston knew that her position as director, as well as the corresponding pay increase, was temporary. Moreover, the record clearly establishes that the Commission was experiencing severe financial difficulties. In January, 1984 through March, 1984, the Commission was forced to lay off its entire staff. Although the staff returned to work in March, 1984, the Commission's financial condition worsened, as reflected by the $87,000 cut in its operating budget from fiscal year 1983–1984 to fiscal year 1985–1986.

■ The trial court found that Ms. Heston had failed to prove her case of discrimination and, therefore, denied her relief. As we held in syllabus point 8 of *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968):

A finding of fact made by a trial chancellor or by a trial court sitting in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by this Court on appeal unless the evidence plainly or decidedly preponderates against such finding.

In light of the foregoing, the evidence is not plainly against the trial court's finding; thus, this decision should not be disturbed on appeal.[6]

---

4. The May 20, 1985, minutes of the Commission's special meeting stated that Mr. LaRue was being hired "with a salary of $17,500 *including fringe benefits.*" (Emphasis added.)

5. The Commission's operating budget was $308,-250 in fiscal year 1983–1984. In fiscal year 1985–1986, the operating budget was decreased to $216,300.

6. Ms. Heston further asserts that she was denied procedural due process because the notice provided was insufficient and because the hearing

Accordingly, we affirm the decision below.

Justice McGraw participated and concurred in this decision but departed from the Court prior to the preparation of the opinion. Justice Workman did not participate in the consideration or decision of this case.

Affirmed.

was not before an unbiased tribunal. Thus, Ms. Heston argues she is entitled to damages pursuant to 42 U.S.C. § 1983.

To establish a procedural due process claim, Ms. Heston must show that she has been deprived of a protected liberty or property interest encompassed in the due process clause of the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). There is some question in this case whether Ms. Heston has such a property interest in her position with the Marion County Parks Commission. Even if we assume Ms. Heston did have a protected property interest in her job, "... [T]he availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely fails or declines to take advantage of the administrative procedure." *Dusanek v. Hannon,* 677 F.2d 538, 542–43 (7th Cir.1982), *cert denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982) (footnotes omitted).

These decisions do not amount to a requirement of exhaustion of administrative remedies as a predicate to a section 1983 claim.

Rather, they express the logical proposition that a state cannot be held to have violated due process requirements when it made procedural protections available and the plaintiff has simply refused to avail himself of them. *Dusanek v. Hannon,* 677 F.2d at 543; *accord, Riggins v. Board of Regents of the University of Nebraska,* 790 F.2d 707 (8th Cir.1986); *Morrell v. Stone,* 638 F.Supp. 163 (W.D.Va.1986); *Marlowe v. Village of Wauconda,* 91 Ill.App.3d 874, 47 Ill.Dec. 655, 415 N.E.2d 660 (1980); *cf. United States v. Charles George Trucking Co.,* 823 F.2d 685 (1st Cir.1987); *State ex rel. Ruddlesden v. Roberts,* 175 W.Va. 161, 332 S.E.2d 122 (1985). Upon a review of the record, we find the administrative procedures provided Ms. Heston were sufficient. She was provided with notice, an opportunity to be heard, and the right to counsel. *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Because Ms. Heston was provided with sufficient procedural protections and failed to avail herself of them, the Commission cannot be held to have violated due process requirements.