46 F.3d 1123
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jesse H. FERGUSON; Phillip Miller, Plaintiffs-Appellees,
v.
GUYAN MACHINERY COMPANY, a West Virginia corporation,
Defendant-Appellant.
 No. 93-2593.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 29, 1994.
Decided Jan. 20, 1995.
 
 ARGUED: Frederick F. Holroyd, II, HOLROYD & YOST, Charleston, West Virginia, for Appellant. Robert Lee White, Madison, West Virginia, for Appellees.
 OPINION
 Before HALL, NEIMEYER, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Guyan Machinery Company (Guyan) appeals the district court's denial of its post-trial motion for judgment as a matter of law (JAMOL), pursuant to Fed.R.Civ.P. 50(b), contending that the evidence was insufficient to support the jury's verdicts on the claims of age discrimination in employment, asserted by the Appellees, Jesse Ferguson (Ferguson) and Phillip Miller (Miller), pursuant to Sec. 5-11-9(1) of the West Virginia Human Rights Act, W. Va.Code Ann., Secs. 5-11-1 to 5-11-19 (Michie 1994 & Supp.1994). After careful review of the record, we vacate the judgment of the district court with respect to the age discrimination in employment claims and remand for a new trial on those claims.[1]
 
 I.
 
 2
 Guyan manufactures machine parts. Ferguson, who was fifty-one years old when Guyan terminated him, worked for Guyan for thirty years; and Miller, who was forty-seven when Guyan terminated him, worked for Guyan for twenty-three years. Both men had excellent employment records with Guyan. In 1990, Ferguson and Miller set up a small business on the side which manufactured machine parts, but not the same kind of parts manufactured by Guyan, some of which parts it sold to Guyan. Subsequently, Guyan twice approached Ferguson and Miller for assurance that their side business would not begin competing with Guyan, and both times, Ferguson and Miller assured Guyan that it would not. A few months later, Guyan presented Ferguson and Miller with non-competition agreements that would take effect if their employment with Guyan ceased, and informed them that unless they signed the agreements, they would be terminated. Desiring to keep their jobs, Ferguson and Miller signed the agreements.
 
 
 3
 In May 1991, Bob Shell (Shell), Guyan's chief executive officer, and Joe Worth (Worth), Guyan's president, informed Ferguson and Miller that they would be terminated unless they shut down their side business. Ferguson and Miller retorted that they did not intend to shut down their side business because they believed it was their only source of financial security, considering what they believed to be their impending discharge. When, after several weeks, Ferguson and Miller still refused to shut down their side business, Worth terminated Ferguson and Miller, but asked them to train their replacements, who were both approximately fifteen years younger than Ferguson and Miller and under the age of forty.
 
 
 4
 On March 27, 1992, Ferguson and Miller filed complaints against Guyan in West Virginia state court, alleging Guyan terminated them because of their age in violation of Sec. 5-11-9(1) of the West Virginia Human Rights Act, W. Va.Code Ann., # 8E8E # 5-11-1 to 5-11-19 (Michie 1994 & Supp.1994) and Sec. 623 of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. Secs. 621-34 (West 1985 & Supp.1994), and further alleging four breach of contract claims related to their employment, which included Guyan's wrongfully refusing to pay them length of service bonuses. Guyan removed the case to the United States District Court for the Southern District of West Virginia based on a federal question. In its answers, Guyan denied that it terminated Ferguson and Miller because of their age, and stated as an affirmative defense that it terminated them because their "job performance[s] had deteriorated due, in part, to another business plaintiff[s] operated." (J.A. 44, 51).
 
 
 5
 At trial, Ferguson and Miller only tried their age discrimination claims under the West Virginia Human Rights Act and their breach of contract claims alleging that Guyan wrongfully refused to pay their length of service bonuses. Their remaining ADEA and breach of contract claims were dismissed by the district court.
 
 
 6
 As evidence that Guyan terminated them because of their age, Ferguson and Miller offered trial testimony of six former Guyan employees who were over forty years of age when Guyan terminated them. Guyan contended that it terminated these employees pursuant to a reduction-in-force plan (RIF) which it had implemented to cut costs and offered evidence that it operated at a loss during the time it terminated these six employees. Guyan also offered statistical evidence which it contended established that it did not terminate persons over forty years of age in greater proportion to persons under forty years of age while executing its RIF. Shell testified that Guyan fired Ferguson and Miller because he perceived that their job performances were deteriorating and would continue to deteriorate due to their side business.[2]
 
 
 7
 At the close of Ferguson and Miller's evidence, Guyan made a motion for JAMOL with respect to the age discrimination claims, contending that they had not presented sufficient evidence to succeed on these claims. The district court denied the motion. At the close of the evidence, Guyan renewed its motion for JAMOL, and again, the district court denied it. The jury returned a verdict in favor of Ferguson, awarding him $375,000 for lost wages, $50,000 for emotional distress, $1,250 for his unpaid bonus, and $10,000 in punitive damages, for a total of $436,250. The jury returned a verdict in favor of Miller, awarding him $510,000 for lost wages, $50,000 for emotional distress, $1,500 for his unpaid bonus, and $10,000 in punitive damages, for a total of $571,500. Again, Guyan unsuccessfully moved for a JAMOL, and the district court entered judgment on the jury verdicts. Guyan appeals.
 
 II.
 
 8
 We review the denial of a motion for JAMOL de novo, see Goodwin v. Metts, 885 F.2d 157, 160 (4th Cir.1989), cert. denied, 494 U.S. 1081 (1990), and in the case of a jury verdict entered as judgment, we must sustain the jury's verdict unless the evidence is not of such quality and weight that " 'reasonable and fair-minded [people] in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party.' " Id. (quoting Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir.1980)). We must review the evidence in the light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences from the evidence. Id. We may not weigh the credibility of the witnesses or substitute our judgment for that of the jury. Charleston Area Med. Ctr., Inc. v. Blue Cross and Blue Shield, 6 F.3d 243, 247-48 (4th Cir.1993).
 
 A.
 
 9
 Under West Virginia law, an employee has the initial burden of establishing a prima facie case of age discrimination. Conaway v. Eastern Associated Coal Corp., 358 S.E.2d 423 (W. Va.1986). In order to establish a prima facie case of age discrimination, under West Virginia law, an employee must establish that: (1) he is a member of a protected class; (2) he suffered an adverse employment decision; and (3) but for his age, the adverse employment action would not have been taken. Id. at 429. In Conaway, the Supreme Court of Appeals of West Virginia noted that the first two parts of the test are easy, but that the third will cause controversy:
 
 
 10
 Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion.
 
 
 11
 Id. at 429-30 (emphasis added). The Supreme Court of Appeals of West Virginia noted this evidence may, but is not required, to take the following forms: " an admission by an employer, a case of unequal or disparate treatment between members of the protected class and others, by elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others." Id. at 430 (citations omitted). Additionally, in Raber v. Eastern Associated Coal Corp., 423 S.E.2d 897, 899 (W. Va.1992), the Supreme Court of Appeals of West Virginia recognized that the testimony of other employees which creates a noticeable trend of the employer laying off older workers may be evidence that an employer discriminated against a protected older employee.
 
 
 12
 Notably, the employee's satisfaction of the requisites of a prima facie case serves only to shift the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment actions. Conaway, 358 S.E.2d at 430. "The reason need not be a particularly good one. It need not be one the judge or jury would have acted upon. The reason can be any other reason except that the [employee] was a member of a protected class." Id. If the employer meets this burden, then the burden shifts to the employee to prove by a preponderance of the evidence that the reason proffered by the employer was pretextual. See Heston v. Marion County Parks & Recreation Comm'n, 381 S.E.2d 253, 256 (W. Va.1989); Conaway, 358 S.E.2d at 429-30.
 
 
 13
 As far as carrying their ultimate burden of proof to prove that Guyan discriminated against them, Ferguson and Miller must follow the evidentiary standards for unlawful employment discrimination under Title VII, 42 U.S.C.A. Sec. 2000e to 2000e-17 (West 1981 & Supp.1994). Heston, 381 S.E.2d at 256. In St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993), the Supreme Court held that under Title VII, the jury's rejection of the legitimate, nondiscriminatory reason proffered by the employer, coupled with the elements of the prima facie case will permit the jury to infer the ultimate fact of intentional discrimination, and no additional proof of discrimination is required. However, rejection of the proffered reason does not compel judgment for the plaintiff. Id.; see Dawson v. Allstate Ins. Co., 433 S.E.2d 268, 275 and n. 5 (W. Va.1993) (pointing out that under Hicks, plaintiff's showing that the employer's nondiscriminatory reason is pretextual does not entitle him to judgment as a matter of law because the ultimate burden of persuasion remains with the plaintiff).
 
 B.
 
 14
 Guyan argues that we should reverse the district court's judgment because: (1) Ferguson and Miller did not present sufficient evidence at trial to establish the third element of the prima facie case (i.e., that but for their age, Guyan would not have terminated Ferguson or Miller), and (2) they did not prove by a preponderance of the evidence that the legitimate nondiscriminatory reason proffered by Guyan was pretextual. Ferguson and Miller, as Guyan concedes, clearly met the first two elements of a prima facie case. Ferguson, age fifty-one, and Miller, age forty-seven, were members of a protected class, and both suffered an adverse employment decision. See Conaway, 358 S.E.2d at 429. Thus, the issues on appeal are whether Ferguson and Miller satisfied the third element of the prima facie case and whether they proved by a preponderance of the evidence that Guyan's proffered reason was pretextual.
 
 
 15
 Ferguson and Miller offered the following indirect evidence as proof that, "but for" their age, Guyan would not have terminated them: (1) undisputed evidence that Guyan filled both their positions with men under forty years of age, and (2) evidence of a noticeable trend in Guyan's RIF to lay off older workers first and not promote the ones they kept, thus encouraging them to retire. Id. at 430; Raber, 423 S.E.2d at 899. As proof of this noticeable trend, Ferguson and Miller offered the testimony of six former Guyan employees who were over forty years of age at the time Guyan terminated them pursuant to the RIF. None of the employees had any direct evidence that Guyan had terminated them because of their age, but all testified that they had good job performance records and had more experience than other younger employees that Guyan retained. Guyan denied terminating the six employees because of their age, and offered evidence that it terminated these people pursuant to the RIF necessitated by operating losses beginning in 1981. Guyan also offered statistical evidence that during the years 1988, 1989, 1990, and 1991, it terminated employees under forty years of age at a higher rate than employees over forty years of age. Our review of the statistical evidence presented by Guyan reveals that it was not conclusive. Ferguson and Miller offered evidence that Guyan's statistics were fundamentally flawed because Guyan counted probationary employees, the great majority of which were under forty years old, in the number of employees who were terminated. This circumstance, Ferguson and Miller argued, skewed the ratio of under forty year old employees terminated to over forty year old employees terminated during the RIF.
 
 
 16
 Guyan admitted that it included the probationary employees in its figures.[3]
 
 
 17
 We hold that the evidence presented by Ferguson and Miller was insufficient to sustain the jury's finding that "but for" their age, Guyan would not have terminated Ferguson and Miller. Conaway, 358 S.E.2d at 429-30. First, Guyan never admitted terminating Ferguson and Miller because of their age. See id. Instead, the evidence was undisputed that Guyan informed Ferguson and Miller upon their termination that Guyan was terminating them because they refused to shut down their side business after several requests. Second, Ferguson and Miller did not present any evidence that Guyan permitted other, younger employees to operate a side business without terminating them.[4] See id. Third, Ferguson and Miller did not offer any evidence to rebut Guyan's legitimate nondiscriminatory reason that it actually perceived their job performances were deteriorating or likely to deteriorate due to their operating a side business. Finally, Ferguson and Miller did not present any statistics that showed that older employees at Guyan received substantially different treatment than younger employees. See id.
 
 
 18
 Turning to Guyan's burden of production to articulate a legitimate, nondiscriminatory reason, Guyan argued that its reason for terminating Ferguson and Miller was that it perceived their job performances to have been deteriorating and that such deterioration would continue. As previously mentioned, Shell testified at trial that he terminated them because he "didn't feel that [Guyan] could run a company without everybody giving [it] one-hundred percent," and he "didn't feel [Guyan was] getting that." (J.A. 157). Ferguson and Miller argue that Guyan cannot utilize this reason to rebut their prima facie case because under West Virginia law, Guyan's nondiscriminatory reason is an affirmative defense which must have been pled in its answer, id. at 430 & n. 13, and thus Guyan was wedded to the reason it gave in its answer with no evidence at trial to rebut it (i.e., that Ferguson's and Miller's job performances had actually deteriorated due to their operation of a side business).
 
 
 19
 Because the Federal Rules of Civil Procedure apply in this case, see Hanna v. Plumer, 380 U.S. 460, 472-74 (1965), and they do not require such a narrow reading of the pleadings, we reject this argument. The Federal Rules of Civil Procedure only require that an affirmative defense be definite enough to put the plaintiff on fair notice of its nature. Fed.R.Civ.P. 8(c); 5 Charles Wright & Arthur Miller, Federal Practice and Procedure 2d Sec. 1274 at 455-56 (West 1990 & Supp.1994). The elimination of the stringency under the prior code pleading is underscored by Fed.R.Civ.P. 8(f), which states simply that "all pleadings shall be so construed as to do substantial justice." Therefore, the legitimate, nondiscriminatory reason which Guyan proffered in its answer for terminating Ferguson and Miller (i.e., their job performances were actually deteriorating) was definite enough to put Ferguson and Miller on fair notice of the reason which Guyan proffered at trial (i.e., Guyan perceived that their job performances were deteriorating). Accordingly, Shell's perception that Ferguson and Miller's job performances were deteriorating and would continue to deteriorate due to the operation of their side business constituted Guyan's proffered legitimate, nondiscriminatory reason.[5]
 
 
 20
 Turning to the evidence that the jury considered with regard to pretext, we note that Ferguson and Miller did not offer any evidence, direct or indirect, that Guyan's proffered, legitimate, nondiscriminatory reason was pretext for their discriminatory motive, and thus, Ferguson and Miller failed to prove pretext by a preponderance of the evidence. First, the evidence was undisputed that Guyan did not make any reference to Ferguson and Miller's age during the conversation in which Shell and Worth informed Ferguson and Miller that they would be terminated unless they shut down their side business or in the conversation a few weeks later when Worth actually terminated them. Rather, the conversations pertained to Guyan's displeasure over Ferguson and Miller's operating a side business. Second, although Guyan only bore the burden of production in articulating a legitimate nondiscriminatory reason for terminating Ferguson and Miller, rather than the burden of persuasion, Guyan presented evidence of a tenthousand-dollar-bid mistake of which it considered Miller partially culpable as evidence of its concern over the negative effect it perceived the side business was having and would continue to have on the job performances of Ferguson and Miller.
 
 
 21
 The evidence, thus, was insufficient to sustain the jury's ultimate finding of age discrimination. Because the standard for proving age discrimination was not fully appreciated by the parties and therefore, not considered by the court and jury, it is in the interest of justice that Guyan have the benefit of the articulation of the standard provided here, and that Ferguson and Miller have an opportunity to meet the proof. We thus will order a new trial. See Fed.R.Civ.P. 50(d); Neely v. Eby Constr. Co., 386 U.S. 317, 329, reh'g denied, 386 U.S. 1027 (1967); Board of County Comm'rs v. Liberty Group, 965 F.2d 879, 886 (10th Cir.1992); Charles Wright and Arthur Miller, Federal Practice and Procedure 2d Sec. 2540 at 615 (1971). In Neely, the Supreme Court specifically recognized the power of appellate courts to grant a new trial in the event it sets aside the jury's verdict for insufficiency of the evidence: "[i]f appellee presents no new trial issues in his brief or in a petition for rehearing, the court of appeals may, in any event, order a new trial on its own motion or refer the question to the district court based on factors encountered in its own review of the case." Neely, 386 U.S. at 329.
 
 III.
 
 22
 Finally, we turn to an issue not raised by either party--damages. Although neither party addressed the issue of the compensatory damages awarded to Ferguson and Miller for their lost wages with respect to their age discrimination claims, we were struck by their unprincipled calculation, and we therefore, sua sponte, address this issue. See Ramsey v. Travelers Ins. Co., 317 F.2d 300 (4th Cir.1963) (reviewing court may recognize plain error of its own volition). When an employer is found liable for terminating an employee for a discriminatory reason in violation of Sec. 5-11-9(1) of the West Virginia Human Rights Act, the employee may only recover lost wages until he obtains comparable employment, reduced by interim or part-time wages received. See Frank's Shoe Store v. Human Rights Comm'n, 365 S.E.2d 251, 260 (W. Va.1986) (holding such calculation proper when employer reduced hours of a pregnant woman and then terminated her when she filed a discrimination complaint). Here, the jury awarded Ferguson $375,000 and Miller $510,000 as compensation for their lost wages. The record does not contain any reference by the parties as to how these lost wages were calculated, and the jury instructions on this issue were likewise void of any guidance as to how the jury should arrive at a proper calculation for lost wages.[6] Since the damages appear to be wholly excessive, the record is without explanation as to their calculation, and the jury instructions on this issue were painfully inadequate, we hold that the damages awarded in this case with respect to Ferguson and Miller's lost wages were excessive and inconsistent with West Virginia law. Id.
 
 IV.
 
 23
 Since Guyan does not appeal the jury's award of the unpaid bonuses to Ferguson and Miller, our opinion does not affect the judgment in that respect. We, however, hold that there was insufficient evidence to support the jury's verdict with respect to liability and damages on Ferguson and Miller's age discrimination claims under West Virginia law. Specifically, Ferguson and Miller did not present sufficient evidence to prove that "but for" their age, Guyan would not have terminated them. Furthermore, Ferguson and Miller did not present sufficient evidence to prove by a preponderance of the evidence that Guyan's proffered legitimate, nondiscriminatory reason was pretext for a discriminatory motive. Finally, we hold that the compensatory damages awarded to Ferguson and Miller for their lost wages in connection with their age discrimination claims were excessive. We, therefore, vacate the judgment entered by the district court on Ferguson and Miller's age discrimination claims under the West Virginia Human Rights Act and remand the case for a new trial on liability and damages.
 
 VACATED IN PART AND REMANDED
 HALL, Circuit Judge, dissenting:
 
 24
 I would affirm the judgment of the district court because the evidence, if we view it in the light most favorable to the plaintiffs, was sufficient to permit "reasonable and fair-minded men in the exercise of impartial judgment" to find that Guyan's decision to fire Ferguson and Miller was based in part on age. Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir.1980).
 
 
 25
 In West Virginia, the third element of a prima facie case of age discrimination is a showing that "but for the plaintiff's protected status, the adverse decision would not have been made." Conaway v. Eastern Associated Coal Corp., 358 S.E.2d 423, 429 (W. Va.1986). This element is, of course, also the ultimate issue. See id. at 431 (McGraw, C.J., dissenting). However, all that is required at the prima facie stage "is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status ... so as to give rise to an infer ence that the employment decision was based on an illegal discriminatory criterion." Id. at 429-30.
 
 
 26
 The majority recognizes that Ferguson and Miller adduced some evidence of the third "but for" element of the prima facie case: they were replaced by men under forty years of age, and there was a trend of laying off older workers first or encouraging them to retire early by not promoting them.[1] Ante at 7-8. I would add the following pieces of evidence: Ferguson and Miller were performing at satisfactory levels when they were dismissed,[2] and, according to Miller, CEO Shell told them that Guyan would terminate them even if they had not been running a potentially competitive business on the side.[3] JA 534. This evidence was sufficient to "give rise to an inference" that age was a motivating factor in the decision to fire the plaintiffs.
 
 
 27
 Although there are differences in the evidentiary schemes used in proving discrimination under the federal and state statutes, the ultimate question in both is the same: Was the plaintiff's age a motivating factor in the decision to fire him? Making out a prima facie case creates a presumption of unlawful discrimination. See Texas Dept of Community Affairs v. Burdine, 450 U.S. 248, 254 (1973). The company destroyed the presumption by introducing evidence of a lawful reason for the firings. See id. at 255 & n. 10 (if the burden of production is sustained, then the presumption "drops from the case"). In anchoring its decision on a ruling that the plaintiffs "did not offer any evidence, direct or indirect, that Guyan's proffered ... reason was pretext for their discriminatory motive, and, thus, Ferguson and Miller failed to prove pretext by a preponderance of the evidence," the majority attaches unwarranted significance to Guyan's satisfaction of its burden of production. Ante at 9-10.
 
 
 28
 That a facially legitimate reason was given by Guyan merely allowed the case to proceed. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993). Contrary to the assertion of the majority, ante at 9-10, the plaintiffs were not required to adduce additional evidence to prove that the proffered reason was a pretext. The jurors were certainly able to reject the proffered reason on the basis of the evidence adduced by the plaintiffs in their case in chief[4] and their observation of Shell on the witness stand. See id. ("The factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the prima facie case, suffice to show intentional discrimination").[5] I respectfully dissent.
 
 
 
 [1]
 Guyan does not appeal the judgment in favor of Ferguson and Miller with respect to their breach of contract claims alleging Guyan wrongfully refused to pay their length of service bonuses, and therefore, our opinion does not disturb the judgment in that respect
 
 
 [2]
 Shell, the individual who actually made the decision to terminate Ferguson and Miller, testified at trial that he terminated them because he "didn't feel that [Guyan] could run a company without everybody giving [it] one-hundred percent," and he "didn't feel [Guyan was] getting that." (J.A. 157)
 
 
 [3]
 Ferguson and Miller did not offer any statistical evidence of their own
 
 
 [4]
 Ferguson and Miller cannot point to the testimony of Harold Hill, a former Guyan employee who operated a blade sharpening business on the side, as evidence of unequal treatment because Hill was forty-three years old and in the protected class under West Virginia law when he began the business, and he did not testify that Guyan was even aware that he operated the side business
 
 
 [5]
 The majority cites the testimony of Miller, (J.A. 534), for the proposition that "according to Miller, CEO Shell told them that Guyan would terminate them even if they had not been running a potentially competitive business on the side." Post at 13. The dissent mischaracterizes Miller's testimony because Shell's purported statement only reveals that Ferguson and Miller would have been terminated for operating a filling station as a side business. This fact is, of course, consistent with Guyan's articulated, legitimate, nondiscriminatory reason for terminating Ferguson and Miller--that Guyan perceived their job performances to have been deteriorating due to the operation of a side business and that such deterioration would continue
 
 
 [6]
 The entire jury instructions regarding compensatory damages consisted of the following:
 If you find for the plaintiff, that is, a given plaintiff on the issue of liability, you may award him such compensatory damages, if any, as you find by a preponderance of the evidence are proximately caused by the conduct for which the defendant is liable, consisting of any lost wages and benefits, both past and future, and any emotional distress.
 (J.A. 1136-37).
 
 
 [1]
 The majority recognizes that the statistical evidence offered by Guyan to rebut the evidence of such a trend was flawed and inconclusive. Ante at 7-8
 
 
 [2]
 Unlike in the federal scheme, satisfactory job performance is not an enumerated element of a prima facie case in West Virginia. See, e.g., EEOC v. Western Elec. Co., 713 F.2d 1011 (4th Cir.1983). Nevertheless, it is certainly evidence giving rise to an inference of discriminatory motive. 3 Perhaps anticipating that the company might use the bid loss as a reason for his firing, Miller persuasively demonstrated in his case in chief that he was not responsible for the loss. JA 527-30
 
 
 [4]
 Specific rebuttal would be difficult, given that the reason was the employer's "perception" that the plaintiffs' moonlighting "might" interfere with their job performance. 5 There is no reason to believe that West Virginia would not follow St. Mary's. See Barefoot v. Sundale Nursing Home, ____ S.E.2d ____, 1994 WL 708092 (W. Va.) ("[W]e have consistently striven to construe the [state discrimination statute] to coincide with the federal courts' interpretation of Title VII....") (Cleckley, J., dissenting)