**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CRAIG E. RABER; STEPHEN W.
WIERBONSKI, and others similarly
situated,
Plaintiffs-Appellants,

v.                                                              No. 96-1119

SOUTHERN OHIO COAL COMPANY
SEVERANCE PAY PLAN; SOUTHERN
OHIO COAL COMPANY,
Defendants-Appellees.

CRAIG E. RABER; STEPHEN W.
WIERBONSKI, and others similarly
situated,
Plaintiffs-Appellees,

v.                                                              No. 96-1174

SOUTHERN OHIO COAL COMPANY
SEVERANCE PAY PLAN; SOUTHERN
OHIO COAL COMPANY,
Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CA-95-81-1)

Argued: December 4, 1996

Decided: February 12, 1997

Before RUSSELL and MICHAEL, Circuit Judges, and DAVIS,
United States District Judge for the District of Maryland,
sitting by designation.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Brent E. Beveridge, BEVERIDGE LAW OFFICES, Fairmont, West Virginia, for Appellants. Franck Georg Wobst, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellees. **ON BRIEF:** Nancy Engbers Falk, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Craig E. Raber and Stephen W. Wierbonski filed suit in district court, on behalf of themselves and others similarly situated, alleging that Southern Ohio Coal Company (SOCCO) and the SOCCO Severance Pay Plan (the Plan) violated the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C.§ 1001 et seq. In addition, Raber brought an individual ERISA claim and a claim under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq. SOCCO and the Plan filed a motion to dismiss or, in the alternative, for summary judgment and later moved for attorneys' fees under 29 U.S.C. § 1451(e) and Fed. R. Civ. P. 11. The district court granted summary judgment (or, in the alternative, dismissal) to SOCCO and the Plan on all counts, granted their motion for attorneys' fees on the ERISA claims, and denied SOCCO's Rule 11 motion for attorneys' fees under Raber's state law claim. Raber and Wierbonski now appeal from the final judgment and the grant of attorneys' fees, and SOCCO cross-appeals from the denial of Rule 11 attorneys' fees. Finding no error in the district court's orders, we affirm.

2

I.

Because we are reviewing a grant of summary judgment, we construe the evidence in the light most favorable to appellants. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Raber and Wierbonski worked in the Martinka Mine as salaried employees of SOCCO. In early 1992 SOCCO decided to sell the mine to Martinka Coal Company (MCC), a newly-formed subsidiary of Eastern Associated Coal Company (Eastern). As part of the sales agreement, MCC agreed to extend employment offers to salaried employees at the mine who were on SOCCO's payroll as of June 15, 1992. MCC also agreed to recognize the service time of former SOCCO employees for purposes of calculating any future severance benefits.

In light of the impending sale, SOCCO established a severance plan effective June 15, 1992. The two provisions of the plan pertaining to eligibility state:

> 2.1 Eligible employees whose employment with the Company is involuntarily terminated due to a Sale of Assets and who do not accept employment with Martinka Coal Company ("MCC") shall be entitled to a Severance Payment as provided in paragraph 3.1 of this Plan.

> 2.2 Eligible employees whose employment with the Company is involuntarily terminated due to a Sale of Assets and who accept employment with MCC shall be entitled to a Severance Payment from the Company if the employee's employment with MCC is involuntarily terminated due to a downsizing or lack of work at MCC before January 1, 1995.

Additionally, paragraph 5.1 gives the Plan Administrator discretion to interpret and apply the plan.

MCC offered Wierbonski continued employment at the mine, which he accepted. He remained employed with MCC up to and after January 1, 1995. Raber, who was on a leave of absence from January

3

14 to June 22, 1992, was initially informed that he would be terminated, and SOCCO sent him a letter informing him that he was eligible for severance pay. According to Raber, he was told by Jerry Deems, a supervisor at SOCCO, that he had been laid off pursuant to orders by Eastern. Raber then asked if his layoff had anything to do with a suit he had filed against Eastern.[1] Deems allegedly shrugged his shoulders and said that it was not his decision. Raber then asserted he would take legal action if necessary to keep his job. Raber alleges that about five days later he received a call at approximately 11:30 p.m. from a manager at Eastern. The manager offered Raber continued employment with MCC and allegedly apologized for the injustices that had been done to Raber in the past.

Deems of SOCCO offered a somewhat different version of why Raber was initially told he was terminated. According to Deems, Raber was left off the payroll list because he was on medical leave when the list was prepared. This same mistake also affected another employee on medical leave. Deems contends that when he realized the error, he asked MCC to hire Raber even though Raber had not been on the list. In any event, MCC promptly hired Raber, and he worked at MCC up to and after January 1, 1995.

II.

Raber and Wierbonski argue that the district court erroneously dismissed or granted summary judgment on their jointly asserted ERISA claim and on Raber's separate ERISA and state law claims. We examine these arguments in turn.

A.

Raber and Wierbonski contend that they, as well as all other employees who were terminated from SOCCO but continued working with MCC, are entitled to severance benefits. As we recognized in

_____

[1] Raber was an Eastern employee prior to his employment with SOCCO, and in 1986 he had filed a suit against Eastern alleging age discrimination. See Raber v. Eastern Assoc. Coal Corp., 423 S.E.2d 897, 899 (W. Va. 1992) (finding that Raber had met the requirements for a prima facie case).

4

Hickey v. Digital Equipment Corp., 43 F.3d 941, 947 (4th Cir. 1995), however, SOCCO has "no obligation to pay severance benefits to appellants unless the Plan include[s] such an obligation." Thus, we must turn to the text of the plan to determine whether appellants should have received such benefits.

Even a cursory review of the plan reveals that appellants have no claim. As Paragraph 2.1 of the plan clearly states, only those "whose employment with [SOCCO] is involuntarily terminated due to a Sale of Assets and who do not accept employment with Martinka Coal Company" (emphasis added) are eligible. Paragraph 2.2 provides an exception only for those who are "involuntarily terminated due to a downsizing or lack of work at MCC before January 1, 1995." Because Raber and Wierbonski accepted employment with MCC and remained with MCC past the January 1, 1995, deadline, they are not entitled to severance benefits. In light of the clarity of the plan's text, appellants' claims concerning the fairness of the plan are irrelevant.[2]

B.

Raber's separate claim under ERISA for severance benefits is equally unavailing. Due to his initial termination, Raber was in fact sent a letter stating that he was eligible for severance benefits. However, this letter was premised on the assumption that Raber would not be rehired by MCC. When MCC did decide to rehire Raber five days later, Raber was no longer eligible under the plan. Because the plan dictates eligibility, Raber is not entitled to severance pay.

C.

Raber's second individual claim asserts that SOCCO violated the

_____

[2] Appellants argue that severance plans should reward for past service and that therefore the differentiation between those who went on to work for MCC and those who did not is discriminatory. This claim, however, is based on the premise that appellants' service time was not carried over to MCC. Appellants present no evidence that their time did not carry over, and a SOCCO administrator said in an affidavit that such time did carry over. Even if the time was not carried over, this issue is irrelevant in light of the clear language of the plan.

West Virginia Human Rights Act.**3** The Act makes it illegal for employers to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he has . . . filed a complaint, testified, or assisted in any proceeding under this article." W. Va. Code § 5-11-9(7)(C). It is also illegal under the Act to "aid[or] abet . . . any of the unlawful discriminatory practices defined in this section." Id. § 5-11-9(7)(A). According to Raber, SOCCO failed to put his name on the list for continued employment with MCC because Eastern (MCC's parent company) wanted to punish Raber for his age discrimination suit. Thus, Raber alleges that SOCCO aided or abetted Eastern in its reprisals against him for filing a complaint under the Act.

Although we must construe all reasonable inferences in favor of the non-moving party, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). As the Supreme Court pointed out in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986), "[t]he mere existence of a scintilla of evidence in support of [Raber's] position will be insufficient; there must be evidence on which the jury could reasonably find for[him]."

Because evidentiary standards under the West Virginia Human Rights Act are the same as those under Title VII of the Civil Rights Act of 1974, see Helston v. Marion County Parks & Recreation Comm'n, 381 S.E.2d 253, 256 (W.Va. 1989), the required showing for a prima facie case of retaliation is identical under both acts. To make a prima facie case, the plaintiff must prove that (1) he engaged in protected activity, (2) the employer knew of his protected activity and took adverse employment action against him, and (3) a causal relationship existed between the protected activity and the adverse employment action. See Cooper v. Norfolk & Western Railway Co., 870 F. Supp. 1410, 1418 (S.D.W.Va. 1994). As with other discrimination claims an employer can rebut the prima facie case with legitimate reasons for the action taken. The burden then shifts to the plaintiff to show that the reasons do not apply or are pretextual. See id.

_____

**3** The district court had the discretion to exercise supplemental jurisdiction over the state law claim even after it dismissed the federal claims. See 28 U.S.C. § 1367(c)(3); Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996).

6

Raber's claim fails to establish parts (2) or (3) of the prima facie case. Concerning part (2), the only possible "adverse action" taken by SOCCO in this case would be SOCCO's initial failure to include him in the list of employees on the payroll as of June 15. SOCCO's actual termination of Raber is not adverse action, since SOCCO also terminated all of its other employees at the Martinka mine. MCC's initial failure to hire Raber could potentially have been caused by SOCCO's failure to put him on the list, and this failure could be considered adverse action. However, MCC decided to hire Raber five days later, and there is no evidence that Raber actually lost any time at MCC because of the delay. Thus, as the district court pointed out, "Mr. Raber's continued employment belies any argument of any damage because of the five-day delay in the decision to hire him."

Even assuming, however, that the five-day delay might constitute adverse action, Raber does not raise a genuine issue of material fact concerning part (3) of the prima facie case. The only evidence Raber offers to establish a causal connection between his lawsuit against Eastern and SOCCO's failure to put him on the list is his conversation with Deems of SOCCO. According to Raber, Deems told him that his (Raber's) layoff was the result of a decision by Eastern's management. When Raber asked if the decision had anything to do with his case against Eastern, Deems allegedly shrugged his shoulders. This evidence indicates only that Eastern, not SOCCO, may have wanted to retaliate against Raber. There is no evidence of any desire on SOCCO's part for retaliation.

Finally, even if Raber can establish a prima facie case by raising an inference that SOCCO aided or abetted Eastern's retaliation, that inference is successfully rebutted by evidence offered by SOCCO. As Deems makes clear in his affidavit, Raber was initially left off the list because he was on a medical leave of absence. When Deems realized this error, he encouraged MCC to rehire Raber. Deems also alleges that this mistake affected another employee in a situation similar to Raber's. Because Raber fails to rebut SOCCO's legitimate explanations for its actions, his claim under the West Virginia Human Rights Act therefore fails.

D.

For the foregoing reasons, we conclude that the district court properly granted SOCCO's motion to dismiss or, in the alternative, for summary judgment.

7

III.

We now turn to the two issues about attorneys' fees.

A.

Raber and Wierbonski contend that the district court erred in awarding attorneys' fees to SOCCO on the ERISA claims. In awarding fees the district court relied on 29 U.S.C.§ 1451(e), the statute cited to it. The proper statute, however, is 29 U.S.C. § 1132(g). The parties have stipulated that the use of the wrong provision "is a purely technical matter." We agree with this assessment because § 1451(e) has been interpreted to use the same standard as§ 1132(g). See Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers' & Food Employers' Pension Trust Fund, 827 F.2d 491, 500 (9th Cir. 1987).

This circuit has applied five factors in determining whether attorneys' fees should be awarded under § 1132(g):

> (1) degree of opposing parties' culpability or bad faith;
>
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
>
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
>
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
>
> (5) the relative merits of the parties' positions.

Quesinberry v. Life Ins. Co. of North America , 987 F.2d 1017, 1029 (4th Cir. 1993). ERISA places the decision to award attorneys' fees "completely within the discretion of the district court." Id. at 1028.

8

The district court based its decision primarily on its inability "to find some reason in law why this suit could be supported." The court also noted that SOCCO had given plaintiffs notice about the insubstantiality of their claims. Although the district court found that Raber and Wierbonski did not pursue their claims with bad faith, the court believed that the plaintiffs had filed suit primarily to extract information from SOCCO. Because Raber and Wierbonski's ERISA claims completely lack support, we find no abuse of discretion by the district court in its award of fees in the amount of $4,850. **4**

B.

SOCCO contends that the district court erred in denying its request for attorneys' fees with respect to Raber's retaliation claim under the West Virginia Human Rights Act. Fees may be awarded under Fed. R. Civ. P. 11(c)(2) if "a reasonable attorney in like circumstances would [not have] believe[d] his actions to [have been] factually and legally justified." Artco Corp. v. Lynnhaven Dry Storage Marina, Inc., 898 F.2d 953, 956 (4th Cir. 1990). The district court's decision is reviewable only for abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400-01 (1990). Because Raber's state law claim was not so lacking in merit that it was unreasonable to file it, we do not find that the district court abused its discretion in failing to impose Rule 11 sanctions.

IV.

The orders and judgment of the district court are affirmed.

AFFIRMED
_____

**4** Although we would have preferred that the district court discuss all five factors in the Quesinberry test, particularly the ability to pay factor, the court in Quesinberry noted that the five factor approach "is not a rigid test, but rather provides general guidelines." Quesinberry, 987 F.2d at 1029.

9